# ATTACHMENT 1

Proposed Complaint-in-Intervention

SOMACH SIMMONS & DUNN
A Professional Corporation
STUART L. SOMACH, ESQ. (SBN 90959)
MAXIMILIAN C. BRICKER, ESQ. (SBN 350150)
500 Capitol Mall, Suite 1000
Sacramento, CA 95814
ssomach@somachlaw.com
mbricker@somachlaw.com

MICHAEL W. DAUGHERTY, ESQ. (Co. Bar 49074)
*Pro Hac Vice* Forthcoming
RAMSEY L. KROPF, ESQ. (Co. Bar 21528)
*Pro Hac Vice* Forthcoming
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone: (916) 446-7979
Facsimile: (916) 446-8199
mdaugherty@somachlaw.com
rkropf@somachlaw.com

Attorneys for [PROPOSED] Plaintiff-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally
recognized as SAN MANUEL BAND OF MISSION INDIANS

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION – RIVERSIDE**

| | |
|---|---|
| BLUETRITON BRANDS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>RANDY MOORE, in his official capacity as Chief of the U.S. Forest Service,<br><br>CHRISTOPHER FRENCH, in his official capacity as Deputy Chief for the National Forest System of the U.S. Forest Service,<br><br>JENNIFER EBERLEIN, in her official capacity as Regional Forester for the Pacific Southwest Region of the U.S. Forest Service, | Case No.: 2:24-cv-09720-JGB-DTB<br><br>**COMPLAINT-IN-INTERVENTION OF PLAINTIFF-INTERVENOR YUHAAVIATAM OF SAN MANUEL NATION FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Hearing Date: February 3, 2025<br>Hearing Time: 9:00 AM<br>Courtroom: 1<br>Judicial Officer Jesus G. Bernal<br><br>Action Filed: August 6, 2024 |

| | |
|---|---|
| DANELLE HARRISON, in her official capacity as Forest Supervisor of the San Bernardino National Forest of the United States Forest Service,<br><br>MICHAEL NOBLES, in his official capacity as Front Country District Ranger of the U.S. Forest Service,<br><br>                    Defendants. | |
| YUHAAVIATAM OF SAN MANUEL NATION, a federally recognized Indian tribe, also federally recognized as SAN MANUEL BAND OF MISSION INDIANS,<br><br>         [PROPOSED] Plaintiff-Intervenor. | |

## JURISDICTION AND VENUE

1. This action arises under the National Historic Preservation Act (NHPA), 54 U.S.C. § 300101 *et seq.*, the National Forest Management Act (NFMA), 16 U.S.C. 1600 *et seq.*, the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, as well as the United States' trust obligation to Indian tribes arising under federal statutory and common law, including Executive Orders 13007 and 13175 regarding government-to-government consultation.

2. The District Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1362, 1331, 2201-2, and 5 U.S.C. § 701, *et seq*.

3. Venue is proper in the Central District of California, Eastern Division, because the Yuhaaviatam of San Manuel Nation (Nation) is located there, and Defendants engaged and continue to engage in conduct there giving rise to the Nation's claims. 28 U.S.C. § 1391(c), (b).

## PARTIES

4. The Nation is a federally recognized Indian tribe of Serrano people possessing authority over its citizens and lands and located on the San Manuel Reservation near Highland, California. The Nation owns the Arrowhead Springs

COMPLAINT-IN-INTERVENTION OF PLAINTIFF-INTERVENOR YUHAAVIATAM
OF SAN MANUEL NATION FOR DECLARATORY AND INJUNCTIVE RELIEF         -2-

property (Arrowhead Springs), which is located at the base of Strawberry Canyon and across which Strawberry Creek flows.

5. Since time immemorial, the Serrano people have occupied and relied on the resources of Strawberry Canyon and Arrowhead Springs for subsistence, cultural, ceremonial, religious, and commercial purposes. Arrowhead Springs and Strawberry Canyon are located in the Nation's ancestral territory, and both constitute culturally significant sacred sites, as defined in Executive Order 13007. These lands feature prominently in the Nation's oral history and were once the site of an ancient village known as Apuiva't in which the Nation's ancestors lived. The Nation reacquired Arrowhead Springs in 2016 to protect its important cultural and natural resources. The resort facilities located at Arrowhead Springs have operated since 1864 and predate both the San Bernardino National Forest (SBNF) and commercial water bottling in Strawberry Canyon. The Nation possesses broad state and federal water rights in East Twin Creek and its tributary Strawberry Creek.

6. Defendant the United States Forest Service (USFS) is a federal agency within the United States Department of Agriculture (USDA). SBNF is within the USFS lands located in Southern California.

7. Defendants Randy Moore, USFS Chief; Christopher French, Deputy Chief for the National Forest System of the USFS; Jennifer Eberlein, Regional Forester for the Pacific Southwest Region of the USFS; Danelle Harrison, Forest Supervisor of the SBNF of the USFS; and Michael Nobles, Front Country District Ranger of the USFS, are employed by the USFS and are all sued in their official capacity. Defendants are the responsible officials within the USFS for managing the USFS and SBNF and issued the Notice of Denial challenged in this case. All listed Defendants are hereinafter referred to individually as "Defendant" or collectively as "Defendants."

8. Plaintiff BlueTriton Brand, Inc. (BlueTriton) is a commercial water bottling company that is contractually obligated to deliver water through its water

COMPLAINT-IN-INTERVENTION OF PLAINTIFF-INTERVENOR YUHAAVIATAM OF SAN MANUEL NATION FOR DECLARATORY AND INJUNCTIVE RELIEF    -3-

collection tunnels, boreholes, water transmission pipelines, and associated improvements located primarily within the SBNF to the Nation. BlueTriton is incorporated under the laws of the State of Delaware, with its principal place of business in Stamford, Connecticut.

## GENERAL ALLEGATIONS

9. Since time immemorial, the Serrano people have stewarded the land and natural resources encompassing Arrowhead Springs and the entire SBNF, including Strawberry Canyon. As noted, both Arrowhead Springs and Strawberry Canyon are located in the Nation's ancestral territory, and both constitute culturally significant sacred sites, as defined in Executive Order 13007. Arrowhead Springs and its surrounding environment, including the famed rock landmark and natural hot mineral springs, hold sacred cultural significance to the Nation and its people. Arrowhead Springs is located at the base of Strawberry Canyon.

10. The Arrowhead Springs Hotel was constructed in 1939 following a fire that destroyed the original hotel and resort structures, first built in 1864. The hotel enjoys a storied history, previously serving as a health resort, Hollywood filming location, and U.S. Navy medical treatment facility during World War II. The Arrowhead Landmark (California Historical Landmark No. 977) has marked the location of the hot mineral springs for centuries and constitutes a sacred site to the Serrano people. Given its historical and cultural significance, Arrowhead Springs is eligible for inclusion on the National Register of Historic Places.

11. Separate from the present dispute, the Nation is currently seeking approval from Defendants to finalize the San Manuel Ancestral Land Exchange, which will return to the Nation a parcel of SBNF land that abuts both Arrowhead Springs and the Nation's Reservation. The land exchange will allow the Nation to connect its current Reservation lands to Arrowhead Springs. Both the Arrowhead Springs parcel and the parcel proposed for exchange contain a portion of

SOMACH SIMMONS & DUNN
A Professional Corporation

COMPLAINT-IN-INTERVENTION OF PLAINTIFF-INTERVENOR YUHAAVIATAM
OF SAN MANUEL NATION FOR DECLARATORY AND INJUNCTIVE RELIEF        -4-

BlueTriton's water delivery infrastructure that Defendants have ordered BlueTriton to remove.

12. For over a century, BlueTriton and its predecessors have operated water collection infrastructure consisting of tunnels, boreholes, and pipelines located in Strawberry Canyon under a series of special use permits issued by Defendants beginning in 1930. The Nation has received a portion of this water, upon which the Nation relies to operate Arrowhead Springs, through the infrastructure operated by BlueTriton and its predecessors (Subject Water).

13. In 1931, BlueTriton's predecessor-in-interest entered a contract to deliver the Subject Water to Arrowhead Springs. In 2016, the Nation proudly reacquired Arrowhead Springs, returning this sacred landscape to the Serrano people. As successor-in-interest to the 1931 contract, the Nation has continuously and reliably received the Subject Water from BlueTriton.

14. It is undisputed that the Nation possesses water rights that authorize its receipt and use of the Subject Water. Indeed, the Nation enjoys riparian, groundwater, and pre-1914 appropriative rights that would permit diversions from Strawberry Canyon under California and federal water law.

15. Currently, the Nation uses the Subject Water to maintain fire safety reserves on which the Nation and surrounding communities depend, to provide domestic water use in the hotel, event spaces, administrative offices, fire station and other facilities, to maintain cultural and recreational facilities, to irrigate a portion of the property, to support native plant propagation, and to sustain a greenbelt that connects surrounding landscapes and that provides a fire defensive zone. If these water deliveries to Arrowhead Springs are cut off before the Nation can secure an alternate water supply, the Nation will be unable to operate its facilities or maintain its property. A municipal water connection is currently infeasible, because the nearest hookup is located far from Arrowhead Springs, and connection would

SOMACH SIMMONS & DUNN
A Professional Corporation

COMPLAINT-IN-INTERVENTION OF PLAINTIFF-INTERVENOR YUHAAVIATAM
OF SAN MANUEL NATION FOR DECLARATORY AND INJUNCTIVE RELIEF      -5-

require significant water delivery infrastructure involving significant costs, permitting entitlements, and time.

16. In addition to the Nation's use, the Subject Water is available to and has historically been regularly accessed by the San Bernardino County Fire Protection District, California Department of Forestry and Fire Protection, and the SBNF.

17. Because Arrowhead Springs has relied on the Subject Water for over a century, and given the existing infrastructure or lack thereof, alternative water supplies do not currently exist that would provide adequate water to maintain the government, recreational, cultural, and wildfire facilities at Arrowhead Springs. Furthermore, the Nation cannot rely on the few existing developed water wells as the wells do not and cannot produce enough water of sufficient quality to meet the property's needs; indeed, much of the well water cannot be used for domestic or irrigation due to temperature and high levels of contaminants.

18. Defendants sent a letter to BlueTriton dated July 26, 2024 (Notice of Denial) that purports to terminate its authorization to operate BlueTriton's infrastructure within the SBNF. ECF No. 1-1, Letter from USFS, July 26, 2024, "Notice of Denial of Application for Use and Occupancy of National Forest Lands and Termination of Special Use Permit FCD728503." The Notice of Denial gave BlueTriton one week to comply, and cease delivering water through its infrastructure, including cutting off the Subject Water to the Nation at Arrowhead Springs. Since then, Defendants have modified their Notice of Denial twice to temporarily authorize continued delivery of the Subject Water to Arrowhead Springs. ECF No. 15-21, Letter from USFS to BlueTriton Brands, Inc., First Modification to Notice of Denial (Aug. 2, 2024), and Letter from USFS to BlueTriton Brands, Inc., Second Modification to Notice of Denial (Aug. 26, 2024). The temporary modification expires on January 15, 2025, at which point BlueTriton will lack authority to deliver the Subject Water to the Nation. *Id.*

19. The Notice of Denial effectively prohibits delivery of the Subject Water to the Nation and terminates its water supply for Arrowhead Springs. BlueTriton received the Notice of Denial on Saturday, July 27, 2024. The Notice of Denial ordered BlueTriton to stop conveying water to Arrowhead Springs within seven days. Defendants never provided the Nation any notice of its action adversely impacting the Nation, before or after its issuance, let alone, engage in the formal consultation the law requires. Indeed, the Nation only received notice of the USFS' Notice of Denial days later when BlueTriton informed the Nation as a courtesy.

20. In the Notice of Denial, Defendants terminate BlueTriton's existing authorization, deny BlueTriton's pending application for a new special use permit, and order BlueTriton to immediately cease all activities on SBNF lands, including operation of the infrastructure that delivers water to Arrowhead Springs. The Notice of Denial nowhere references the Nation or addresses how prohibiting BlueTriton's delivery of the Subject Water to Arrowhead Springs will impact the Nation. The Notice of Denial also mischaracterizes the Nation's operation of Arrowhead Springs by alleging the "hotel and conference facility on the property is not operating." ECF No. 1-1. Contrary to the mischaracterizations, the following is true and was communicated to the USFS prior to its issuance of the Notice of Denial:

    a.    the water received from BlueTriton is the primary water source for Arrowhead Springs and is essential for all property operations, including firefighting;

    b.    there is no alternative sources of water as there is no nearby municipal water connection;

    c.    Arrowhead Springs is used by the Nation daily, including by the government departments housed in the administration building, the firefighters at the fire station, and the employees who operate the events that are held throughout the property;

   d. the Nation has a native plant propagation area on the property and irrigates a defensible green space for wildfire protection; and

   e. water delivered to Arrowhead Springs by BlueTriton is used by local, state, USFS, and the Nation's firefighters for fighting fires at the property and within the surrounding community, and indeed first responders from local, state, and federal agencies use Arrowhead Springs for fire-fighting training.

21. Accordingly, prior to issuing the Notice of Denial, Defendants knew the Nation relies on these water deliveries to operate Arrowhead Springs, and that it houses a tribal conference and events center, administration buildings, the fire station, and recreational and cultural facilities which are used daily by the Nation and its citizens, officials, and employees.  In discussions between the Nation's representatives and Defendants preceding the adverse action, the Nation specifically informed Defendants of the Nation's various needs and uses of the Subject Water, and further explained the lack of an alternative water source for Arrowhead Springs. ECF No. 1-1.

22. Defendants relied upon a contested ruling by the California State Water Resources Control Board (SWRCB) as a basis to terminate delivery of the Subject Water to the Nation, even though the SWRCB determination allowed continuing deliveries of water by BlueTriton to the Nation and Arrowhead Springs.  ECF No. 15-6 at 90-91, SWRCB Order WR 2023-0042 (Sept. 19, 2023).  Furthermore, SWRCB's order specifically acknowledges the Nation's water rights, and for that reason, authorizes BlueTriton to continue delivering the Subject Water to the Nation pursuant to the Nation's senior riparian rights in East Twin Creek.  Moreover, the order was stayed by the Superior Court.  As noted, even absent the undecided appellate status, the SWRCB was careful to recognize water rights the Nation holds and appropriately carved out a water supply for the Nation's purposes.

23. The Notice of Denial also ordered BlueTriton to prepare and submit a plan to remove its infrastructure from SBNF lands within twelve weeks. *See* ECF No. 34, BlueTriton Brands, Decommissioning Plan, Arrowhead Springs (Oct. 2024). BlueTriton submitted its decommissioning plan to Defendants on October 18, 2024. The plan involves the removal of miles of water delivery infrastructure that span a rugged and remote canyon inaccessible by vehicle. Decommissioning will not only prove costly but also involve dangerous activities that could impact Arrowhead Springs and the Nation's cultural resources and water resources. For example, removal activities will involve helicopter flights, hazardous materials, demolitions, and electrical work. Defendants have not adequately analyzed the impact of these activities, which are significant, and the Nation has not had sufficient time to separately evaluate potential adverse effects to its water rights and property if the infrastructure removal proceeds. Despite the Nation's requests, Defendants have refused to engage in formal consultation with the Nation regarding the impacts of BlueTriton's decommissioning plan. When the Nation asked to see a copy of the plan, Defendants responded that the Nation can file a Freedom of Information Act request or secure the plan from BlueTriton.

24. The Nation has exhausted all administrative remedies available to maintain Arrowhead Springs' water supply. In meetings between Defendants and the Nation, Defendants made no attempt to provide a water solution for the Nation if the Notice of Denial is implemented on January 15, 2025, as currently scheduled. Instead, Defendants seek to permanently cut off Arrowhead Springs' historic water supply and have ignored the risks such action poses to life and property, including the consequences of leaving Arrowhead Springs and the surrounding community without water, and thus unable to combat wildfires. Rather than working with the Nation to find a solution, Defendants made and propounded inaccurate assumptions about the Nation's water needs for Arrowhead Springs. In addition, despite the adverse impact of Defendants' actions, Defendants refuse to further modify the

Notice of Denial to allow continued delivery of the Subject Water to Arrowhead Springs pursuant to the Nation's own water rights after January 15, 2025. Accordingly, BlueTriton will be prohibited from delivering the Subject Water to the Nation beginning January 15, 2025, and Defendants will have effectively deprived the Nation of its water supply.

25. Before Defendants issued the Notice of Denial, and during the months that followed, Defendants have failed to engage in meaningful consultation with the Nation regarding how the Notice of Denial may adversely impact the Nation and Arrowhead Springs. As noted, Defendants have likewise failed to consult with the Nation regarding the impact of BlueTriton's decommissioning plan.

26. If BlueTriton's water deliveries to Arrowhead Springs cease, the Nation will be forced to immediately curtail its water usage. This could have numerous adverse effects, including reducing the Nation's (and other regional fire agencies') ability to fight wildfires in the surrounding area, including the SBNF, and rendering Arrowhead Springs inoperable.

27. Defendants have identified no exigent circumstance to justify their mandate for BlueTriton to halt water deliveries to the Nation on January 15, 2025, or to commence decommissioning of its infrastructure.

28. Defendants' actions taken in the Notice of Denial constitute final agency actions and are therefore subject to judicial review under the APA, notwithstanding Defendants' assertion to the contrary in the Notice of Denial. Defendants' violation of their trust responsibility to and duty to meaningfully consult with the Nation regarding the Notice of Denial is also subject to judicial review.

///
///
///
///

## Count I

### (Violation of the National Historic Preservation Act and Administrative Procedure Act)

29. The Nation re-alleges and incorporates by reference each and every allegation set forth in this complaint.

30. Section 106 of the NHPA requires agencies to identify and consider how agency action may impact historic properties and to meaningfully consult with Indian tribes regarding cultural resources within the area of potential effects.

31. Defendants provided no notice to the Nation of their intent to terminate the Nation's water supply at Arrowhead Springs. Defendants have not sufficiently evaluated potential adverse impacts on Arrowhead Springs' historic and cultural resources, nor have they engaged the Nation in meaningful government-to-government consultation that meets the requirements established by section 106 of the NHPA.

32. Defendants' actions violate the NHPA and its implementing regulations.

33. Accordingly, Defendants' issuance of the Notice of Denial is "arbitrary, capricious, an abuse of discretion, [and] not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observance of procedure required by law." 5 U.S.C. § 706(2).

## Count II

### (Violation of the National Forest Management Act and Administrative Procedure Act)

34. The Nation re-alleges and incorporates by reference each and every allegation set forth in this complaint.

35. The NFMA requires Defendants' actions to conform to the standards established in their forest management plans. Defendants' forest management plan

for the SBNF mandates working cooperatively with the Nation on a government-to-government basis when making decisions, including consideration of the Nation's traditional and contemporary uses of SBNF land and resources.

36. Defendants did not consult the Nation prior to issuing the Notice of Denial. Defendants did not attempt to enter any agreement to facilitate cooperation. Defendants made no attempts to identify, let alone protect, the Nation's resources before issuing the Notice of Denial.

37. Defendants' actions violate the forest management plan for the SBNF and, therefore, violate the NFMA and its implementing regulations.

38. Accordingly, Defendants' issuance of the Notice of Denial is "arbitrary, capricious, an abuse of discretion, [and] not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observance of procedure required by law." 5 U.S.C. § 706(2).

## Count III

### (Violation of the Administrative Procedure Act)

39. The Nation re-alleges and incorporates by reference each and every allegation set forth in this complaint.

40. The APA requires the Court to "hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

41. Defendants have failed to engage in reasoned decision making and made a clear error of judgment in terminating a water supply to which the Nation possesses indisputable water rights and upon which Arrowhead Springs has relied for over a century. Defendants have also failed to comply with numerous executive

orders and their own regulations and policies that mandate federal agencies to provide notice to, consult with, and consider and mitigate impacts on Indian tribes regarding agency actions and programs, including Joint Secretarial Order 3403 (2023), Presidential Memorandum on Uniform Standards for Tribal Consultation (2022), Executive Order 13647 (2013), Executive Order 13175 (2000), Executive Order 13007 (1996), USDA Departmental Regulation 1350-002, and Forest Service Manual section 1563.1.

42. Defendants have exceeded their statutory authority and thus have acted contrary to law by assuming the regulatory authority, evidenced by the Notice of Denial, to evaluate whether the volume of water the Nation uses at Arrowhead Springs is excessive and whether the uses to which the Nation puts its water are consistent with California law. That authority rests solely with California authorities.

43. Defendants have exceeded their statutory authority and thus have acted contrary to law by preventing the delivery of and threatening to terminate a water supply upon which the Nation and Arrowhead Springs have relied for over a century, and with regard to which the Nation and Arrowhead Springs possess longstanding and well recognized state and federal water rights. The Nation and Arrowhead Springs have broad water rights to water in Strawberry Canyon that authorize the current and future use of such water by the Nation. All relevant federal legislation relating to the creation and management of national forests recognizes that water rights are governed by state law, and any federal reservation of water rights for the SBNF can only reach water that was appropriated at the time of establishment and necessary to effect the purpose of the reservation. Arrowhead Springs' water rights upon which the Nation relies were established before the creation and establishment of the SBNF, and those rights have been affirmed by numerous state forums and adjudications, including by the SWRCB itself.

44. Defendants also have exceeded their statutory duty by failing to abide by the federal trust responsibility and duty to consult in meaningful government-to-government consultation as stated above and throughout this complaint.

45. The Notice of Denial does not provide Defendants' reasoning for ordering the immediate decommissioning of BlueTriton's infrastructure, which consists of a complex series of tunnels, boreholes, and pipelines that span the entirety of Strawberry Canyon and have been in place since 1931. The Notice does not indicate that Defendants consulted the Nation whatsoever regarding their decision to cut off the water supply for Arrowhead Springs (because they did not), nor does it justify Defendants' drastic change in authorizing the infrastructure that delivers the Subject Water to the Nation.

46. Defendants therefore violated the APA. The Court must hold unlawful and set aside the Notice of Denial because Defendants' action was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observance of procedure required by law." 5 U.S.C. § 706(2).

## Count IV

### (Breach of Trust)

47. The Nation re-alleges and incorporates by reference each and every allegation set forth in this complaint.

48. That the United States owes a fiduciary duty to all federally recognized Indian tribes is beyond dispute. As a consequence of this federal trust responsibility, statutes, regulations, and policies affecting tribes and enacted for their benefit must be construed in a manner favorable to tribes, and agencies should act in the general interests of tribes.

49. Despite ample evidence that the Nation possesses the right to use the Subject Water at Arrowhead Springs and the fact that the SWRCB's cease-and-desist

order explicitly carves out the Nation, Defendants have ordered that BlueTriton cease delivering the Subject Water to the Nation beginning on January 15, 2025. Defendants' actions attempt to adjudicate and quantify water rights and prioritize the SBNF's beneficial uses over those of other water users, including the Nation. Defendants' actions violate numerous federal laws.

50. In addition, Defendants have breached their federal trust responsibility owed to the Nation by violating federal law in issuing the Notice of Denial without engaging in the necessary analysis—including meaningful consultation with the Nation—to determine how such action would impact the Nation, and by actively frustrating the Nation's attempts to preserve its water supply and protect its property interests at Arrowhead Springs.

## NOTICE OF RELATED CASE

This action is related to *Save Our Forest Association, Inc. v. U.S. Forest Service*, Case No. 5:24-cv-01336-CBM-SK, United States District Court, Central District of California, Eastern Division-Riverside.

## REQUEST FOR RELIEF

WHEREFORE, the Nation respectfully requests that this Court enter judgment providing the following relief:

1. Declare that Defendants violated the NHPA and the APA as alleged;

2. Declare that Defendants violated the NFMA and the APA as alleged;

3. Declare that Defendants violated the APA as alleged;

4. Declare that Defendants violated their trust responsibility to the Nation as alleged;

5. Issue injunctive relief to preserve the status quo for water delivery as of July 25, 2024, with regard to delivery of the Subject Water to Arrowhead Springs for use by the Nation by rescinding, setting aside, or holding unlawful Defendants' issuance of the Notice of Denial, unless Defendants modify it to authorize continued delivery of the Subject Water to the Nation for use at Arrowhead Springs;

6. Enjoin Defendants from taking further action that would impact the Nation's receipt of the Subject Water unless or until a future special use permit or congressional authorization is granted that authorizes continued delivery of the Subject Water to the Nation for use at Arrowhead Springs;

7. Award the Nation attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

8. Grant such other and further relief as it may deem appropriate, or as justice requires.

Respectfully submitted,

SOMACH SIMMONS & DUNN

Dated: January 3, 2025   By *s/ Stuart L. Somach*
Stuart L. Somach, Attorneys for [PROPOSED] Plaintiff-Intervenor YUHAAVIATAM OF SAN MANUEL NATION, a federally recognized Indian tribe, also federally recognized as SAN MANUEL BAND OF MISSION INDIANS