# EXHIBIT 6

GRANT DEED

CARRIE THOMAS, a widow, in consideration of Ten Dollars, to her in hand paid, the receipt of which is hereby acknowledged, does hereby GRANT TO Ethel Thomas, a single woman, all that real property in the County of San Bernardino, State of California, described as:

The South half of Lot 185, in Baldwin Lake Tract No. 1724, as per plat of said Tract of record in the office of the County Recorder of said County in Book 25 of Maps, at page 71 thereof.

SUBJECT TO taxes, assessments, conditions, restrictions, reservations, easements, rights and rights of way of record.

TO HAVE AND TO HOLD to the said grantee, her heirs or assigns forever.

WITNESS my hand this 16th day of October, 1934.

Consideration less than $100. Carrie Thomas

STATE OF CALIFORNIA )
) SS
COUNTY OF LOS ANGELES )

On this 16th day of October, 1934, before me, the undersigned, a Notary Public in and for said County, personally appeared Carrie Thomas, known to me to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same.

WITNESS my hand and official seal.

(NOTARIAL SEAL) Vance C. Kibbe

Notary Public in and for said County and State

No. 55. "Endorsed." Recorded at Request of Grantee, Dec 3 1934 at 11:12 A. M. in Book 1016, Page 303, Official Records, San Bernardino County, Calif. Fulton G. Feraud, County Recorder, By A. R. Schultz, Deputy. Fee $1.00.

Compared

F. Cooley E. Quinn

o o o o o

THIS AGREEMENT made and entered into this 26th day of September, 1931, by and between ARROWHEAD SPRINGS CORPORATION, LTD., (formerly Arrowhead Springs Corporation), a corporation organized and existing under and by virtue of the laws of the State of Delaware, duly qualified to do business in the State of California, (hereinafter called "Arrowhead") and CALIFORNIA CONSOLIDATED WATER COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Delaware, duly qualified to do business in the State of California, (hereinafter called "Consolidated"),

WITNESSETH:

WHEREAS, on the 6th day of August, 1930, the parties hereto entered into a certain agreement, which agreement was thereafter recorded in the office of the County Recorder of San Bernardino County, California, in Book 648, at page 122 of Official Records of said County; and

WHEREAS, the parties hereto have determined to enter into a new agreement, whereby each will acquire certain rights and will agree to perform certain obligations distinct and different from the rights and obligations existing under or on account of said agreement of August 6, 1930, (which agreement, for convenience, will be hereinafter referred to as the "principal agreement"),

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements herein contained, the parties hereto do agree as follows:

First: Consolidated agrees that it will forthwith, upon the execution of this agreement, and at its own cost and expense, develop to the fullest reasonable extent all springs,

seepages and other sources of water, if reasonably available, existing in Strawberry Canyon and all lateral canyons opening into Strawberry Canyon, lying north of the northerly line of the south half of Section 31 and of Section 32, Township 2 North, Range 3 West, S.B.B. & M., and produce and continue to produce from said sources of water sufficient water to fill the pipe line built by Consolidated, under and in accordance with the terms of said principal agreement, in ordinary seasons of dry weather.

Second: Consolidated shall hereafter at all times conduct all water developed and saved by it in Strawberry Canyon, and in the lateral canyons northerly of said line established in paragraph First hereof, through the said pipe line, and agrees that all of the water so devecped, saved and produced by it from said sources of supply shall be conducted through said pipe line, and not otherwise, to the point of delivery hereinafter referred to. Of all such water so developed and saved and conveyed through said pipe line, Consolidated shall be entitled to eighty per cent (80%) of the constant flow thereof and Arrowhead shall be entitled, without cost, to twenty per cent (20%) of the constant flow thereof. The point of delivery of said 20% of said water to which Arrowhead is entitled (which is the point of delivery referred to hereinabove in this paragraph) shall be a point in the aforesaid pipe line ten (10) feet north of the rectangular reservoir having dimensions of 50 x 100 feet back of the hotel building of Arrowhead. The method of measurement of said water, so that both Consolidated and Arrowhead shall receive their proportionate part thereof, as hereinabove set out, shall be agreed upon by and between an engineer designated by Arrowhead and an engineer designated by Consolidated. If the two engineers so designated shall fail to agree, then they shall designate a third engineer, who shall be impartial, and the decision of any two of the three engineers thus designated shall be binding upon the parties hereto as to the method of measurement of said water.

Third: Arrowhead grants to Consolidated any and all right, title or interest which Arrowhead now has to develop water from any and all sources whatever, whether surface, subterranean, seepage, or otherwise, in Strawberry Canyon and the lateral canyons northerly of the said northerly line of the said South half of said Sections 31 and 32 above described.

Arrowhead also grants to Consolidated all right, title or interest which it now has or heretofore had in or to the title to, or ownership of, any and all water that Consolidated has heretofore or may hereafter develop from any and all sources whatsoever in Strawberry Canyon and lateral canyons northerly of said northerly line of the south half of said Sections 31 and 32; subject, however, to the right of Arrowhead to have delivered to it by Consolidated at the point of delivery aforesaid, twenty per cent (20%) of all such water developed and saved by Consolidated.

The aforesaid grants are without warranty except the warranty that Arrowhead has not conveyed or transferred to any other person the same right, or any right, title or interest therein.

If, within three (3) years from the date of this agreement, Consolidated does not develop a flow of water in Strawberry Canyon and/or canyons lateral to it, southerly of said line above established, additional to the flow of water developed by Consolidated northerly of said established line, then Arrowhead shall be exclusively entitled, so far as Consolidated is concerned, to develop and produce such additional flow of water at any and all places southerly of said established line, provided that such development and production of water shall not affect or impair the right of Consolidated to develop and produce water northerly of said established line. In the event of the development of any water southerly of said established line, by either party hereto, and northerly of the

south section lines of said Sections 31 and 32, Arrowhead and Consolidated shall each be entitled to an equal one-half part thereof. In the event of the development by Arrowhead of any water southerly of the south section lines of Sections 31 and 32, Arrowhead shall be entitled to the whole thereof, so far as Consolidated is concerned.

Fourth: It is understood and agreed that all of the covenants, terms and conditions of paragraph Fourth of said principal agreement are hereby agreed to and reaffirmed, except that the same shall be deemed to have been amended so as to substitute the words "eighty per cent (80%) of the water flowing through said pipe line" wherever reference is made to the water to which Consolidated is entitled, in lieu of the words "one-half of the water flowing through said pipe line," and except that the same shall be deemed to have been amended so as to substitute the words "twenty per cent (20%) of the water flowing through said pipe line" wherever reference is made to the water to which Arrowhead is entitled, in lieu of the words "one-half of the water flowing through said pipe line."

Fifth: Consolidated agrees that upon the execution of this agreement it will pay to Arrowhead the sum of fifteen thousand dollars ($15,000.00) towards the development by Arrowhead of water in Cold Water Canyon. Arrowhead agrees that said payment of $15,000.00 was induced by its promise, which it hereby obligates itself to perform, to actually commence the development of water in said Cold Water Canyon within one (1) year from the date hereof, and at its own cost (not exceeding said sum of $15,000.00) to diligently prosecute such work to completion; such work to be done in such manner and to involve the construction of such pipe lines, reservoirs and other facilities as Arrowhead may deem advisable.

Sixth: Except as amended hereby, said principal agreement shall not be affected hereby and each and every sentence, clause or paragraph of said principal agreement not amended hereby, and with which this agreement is not inconsistent, and particularly paragraphs Third, Fifth, Sixth, Seventh and Ninth of said principal agreement, are hereby reaffirmed, and the parties hereto agree that said paragraphs shall not in anywise be affected by anything contained in this agreement.

Seventh: Arrowhead does hereby grant, without warranty, to Consolidated the right to use one miner's inch constant flow of the water arising from Penyugal Springs, or from other springs in the vicinity thereof, but not for sale as mineral medicinal water, and does also hereby grant to Consolidated the necessary easement for a pipe line to run from said Penyugal Springs or vicinity to the reservoirs of Consolidated, the exact course and description of such easement to be hereafter agreed upon by the parties hereto. Consolidated does hereby agree that it shall not have any right to the hot water arising on the property of Arrowhead Springs Corporation, Ltd. other than the one miner's inch above described in this paragraph.

Eighth: WHEREAS, Consolidated has stated to Arrowhead that certain false and fraudulent representations were made by Arrowhead and/or by certain of its officers, agents and/or employes prior to and at the time of the purchase by Consolidated and/or California Consumers Company, its predecessor in interest, of the properties and business as set forth and described in that certain agreement of the 4th day of December, 1928, the Amendatory Contract of the same date, the Second Amendatory Contract of the 19th day of December, 1928, and the agreement of February 28, 1929, which agreements are recited in the principal agreement of August 6, 1930, and that Consolidated and California Consumers Company, its predecessor, relied upon such false and fraudulent representations in the making of all of such agreements and in the purchase of said properties; and

WHEREAS, Arrowhead has denied that any of such false or fraudulent representations were so made by it, or any of its officers, employes or agents, and the parties hereto desire to fully release and discharge any and all claims and causes of action arising on

account of any such alleged false or fraudulent representations,

NOW, THEREFORE, for and in consideration of the premises and of the covenants, terms and provisions of this agreement, the parties hereto do hereby fully and completely release and discharge each other of and from any and all causes of action, claims, demands or obligations arising out of or on account of any representations, false, fraudulent or otherwise, of any kind or nature, made or alleged to have been made by either party hereto, or any of their respective officers, agents or employes, in connection with or preliminary to, or otherwise affecting or having to do with, the transfer of the business and properties of Arrowhead to Consolidated or to California Consumers Company, a corporation, or in connection with the amount of water developed or to be developed upon the properties of Arrowhead or the amount of water sold by it, or the source of said water, or in connection with the execution of said principal agreement and/or this agreement, and do hereby release and discharge each other from any and all other obligations, causes of action, claims or demands of every kind or nature whatsoever arising out of, or on account of, or in any manner connected with, the sale by Arrowhead to Consolidated, or to California Consumers Company, of its water distribution business and certain water rights, as provided in said agreement of the 4th day of December, 1928, and subsequent agreements hereinbefore designated, except such as are contained in, or arise out of, or on account of the following:

(a) The warranty deed of February 27, 1929, recorded on the 12th day of May, 1929, in Book 476, Page 175 of Official Records of San Bernardino County, California, as amended by said principal agreement of August 6, 1930;

(b) The principal agreement of August 6, 1930, as amended by this agreement;

(c) The agreement dated January 2, 1931, executed by Arrowhead Springs Corporation and California Consolidated Water Company, entitled "Memorandum of Agreement," as amended by agreement of even date herewith.

(d) The agreement dated August 6, 1930, executed by Arrowhead Springs Corporation and California Consolidated Water Company, entitled "Special Distributors Agreement," as amended by agreement of even date herewith.

(e) This agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed by their respective officers, thereunto duly authorized, and their respective corporate seals to be hereto affixed, the day and year first above written.

(CORPORATE SEAL)

ARROWHEAD SPRINGS CORPORATION, LTD.
By C. M. Rice, Vice-President
And J. C. Macfarland, Assistant Secretary

(CORPORATE SEAL)

CALIFORNIA CONSOLIDATED WATER COMPANY
By S. C. MacPherson, Exec. Vice President
And C. A. Werne, Asst. Secretary

(Prepared by _ )
(Attorney's Approval )
( Pillsbury,Madison & Sutro By _ )
( Other Attorneys _ )
( or Lawler Degnan )
( Form previously approved by _ )
(Description approved J. Paul Jones )
(R. of W. Approval _ )
(Approved _ )
(Approved _ )
(Manager's Approval for Execution _ )

STATE OF CALIFORNIA )
) SS
COUNTY OF LOS ANGELES )

On this 28th day of September, 1931, before me, Mary S. Alexander, a notary public in and for the said county and state, residing therein, duly commissioned and sworn, personally appeared C. M. Rice, known to me to be the Vice-President, and J. C. Macfarland, known to me to be the Assistant Secretary of ARROWHEAD SPRINGS CORPORATION, LTD., one of

the corporations that executed the foregoing agreement, known to me to be the persons who executed the foregoing agreement on behalf of such corporation, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Mary S. Alexander

(NOTARIAL SEAL) Notary Public in and for the County of Los Angeles, State of California

No. 70. "Endorsed." Recorded at Request of C. M. Rice, Dec 3 1934 at 1:01 P. M. in Book 1016, Page 303, Official Records, San Bernardino County, Calif. Fulton G. Feraud, County Recorder, By A. R. Schultz, Deputy. Fee $3.80.

Compared

F. Cooley E. Quinn

o o o o o

NOTICE

NON-RESPONSIBILITY

TO ALL WHOM IT MAY CONCERN:

NOTICE is hereby given that I, H. H. EASTWOOD, am the owner of certain premises described as follows, to-wit: Lot 34, Block 50, Tract 2439, of _ recorded in Book 34, page 78 of Official Records of San Bernardino County, State of California; That I have obtained knowledge that building is in course of construction on said property; that ten days have not elapsed since I obtained this knowledge; and that I will not be responsible for the construction of said building, or for the material or labor used or to be used therein, or for any alteration or repair thereof, or for any work done upon said building, or any addition thereto, or which has been performed, furnished or used in any manner or way upon said land, or upon the building thereon, or addition thereto, or which may hereafter be performed, furnished, or used upon said land, or building, or addition thereto, or for the service of any architect.

THAT HAL WILSON and HORTENCE WILSON are the purchasers of said property under a contract of purchase.

THAT _ is the lessee of said property.

No. and Street _ H. H. Eastwood

STATE OF CALIFORNIA )
) SS
COUNTY OF SAN BERNARDINO )

H. H. Eastwood being duly sworn deposes and says: That the above and within notice is a true copy of a notice posted on lot 34, block 50, tract 2439, Records of San Bernardino County, California, on the third day of December, 1934 by H. H. Eastwood and that the facts therein stated are true of his own knowledge.

H. H. Eastwood

Subscribed and Sworn to before me this 3rd day of December, 1934.

(NOTARIAL SEAL) Mae A. C. Fanning

Notary Public in and for said County and State

STATE OF CALIFORNIA )
) SS
COUNTY OF SAN BERNARDINO )

On this third day of December, A. D., 1934, before me, Mae A. C. Fanning, a Notary Public in and for said County and State, personally appeared H. H. Eastwood known to me to be the person whose name is subscribed to the within Instrument, and acknowledged to me that he executed the same.