SOMACH SIMMONS & DUNN
A Professional Corporation
STUART L. SOMACH, ESQ. (SBN 90959)
MAXIMILIAN C. BRICKER, ESQ. (SBN 350150)
500 Capitol Mall, Suite 1000
Sacramento, CA 95814
Telephone: (916) 446-7979
Facsimile:  (916) 446-8199
ssomach@somachlaw.com
mbricker@somachlaw.com

MICHAEL W. DAUGHERTY, ESQ. (Co. Bar 49074)
*Pro Hac Vice* Forthcoming
RAMSEY L. KROPF, ESQ. (Co. Bar 21528)
*Pro Hac Vice* Forthcoming
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone: (916) 446-7979
Facsimile: (916) 446-8199
mdaugherty@somachlaw.com
rkropf@somachlaw.com

Attorneys for [PROPOSED] Plaintiff-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally
recognized as SAN MANUEL BAND OF MISSION INDIANS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| BLUETRITON BRANDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, <br><br> RANDY MOORE, in his official capacity as Chief of the U.S. Forest Service, <br><br> CHRISTOPHER FRENCH, in his official capacity as Deputy Chief for the National Forest System of the U.S. Forest Service, <br><br> JENNIFER EBERLEIN, in her official capacity as Regional Forester for the Pacific Southwest Region of the U.S. Forest Service, | Case No.: 2:24-cv-09720-JGB-DTB <br><br> **DECLARATION OF PAUL HAMAI IN SUPPORT OF MOTION TO INTERVENE AND MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: February 3, 2025 <br> Hearing Time: 9:00 AM <br> Courtroom: 1 <br> Judge: Hon. Jesus G. Bernal <br><br> Action Filed: August 6, 2024 |

DECLARATION OF PAUL HAMAI IN SUPPORT OF MOTION TO INTERVENE AND MOTION FOR PRELIMINARY INJUNCTION        -1-

| | |
|---|---|
| 1 | DANELLE HARRISON, in her official capacity as Forest Supervisor of the San Bernardino National Forest of the U.S. Forest Service, |
| 2 | |
| 3 | MICHAEL NOBLES, in his official capacity as Front Country District Ranger of the U. S. Forest Service, |
| 4 | |
| 5 | Defendants. |
| 6 | YUHAAVIATAM OF SAN MANUEL NATION, a federally recognized Indian tribe, also federally recognized as SAN MANUEL BAND OF MISSION INDIANS, |
| 7 | |
| 8 | |
| 9 | [Proposed] Plaintiff-Intervenor. |

DECLARATION OF PAUL HAMAI IN SUPPORT OF MOTION TO INTERVENE AND MOTION FOR PRELIMINARY INJUNCTION              -2-

I, PAUL HAMAI, declare:

1. I am a Vice President of Water Resources with Natural Resources Consulting Engineers, Inc. (NRCE), an expert consultant engaged by the Yuhaaviatam of San Manuel Nation, a federally recognized Indian tribe that is also federally recognized as the San Manuel Band of Mission Indians (Nation), and I submit this declaration on the Nation's behalf. The facts set forth in this declaration are based upon my personal knowledge, and if called as a witness, I could and would testify competently thereto.

2. I have a Master of Science in Civil Engineering from the University of California, Berkeley, and a Bachelor of Science in Civil Engineering from University of California, Los Angeles.

3. In operation for 35 years, NRCE provides expert consulting services in civil engineering, water resources, agricultural, and environmental disciplines.

4. In my position, I provide technical support for water rights negotiations, water resources development, and water resources management; I serve as the primary technical consultant in water rights disputes for various tribes; and I prepare expert witness reports for use in water rights litigation, among other engineering design, modeling, and management duties. I have provided technical assistance for almost 33 years on matters concerning tribal water resources development and management.

5. In August 2024, the Nation hired NRCE to provide expert and technical consultation services related to the Nation's water rights, water uses, and regional hydrology.

6. Water that is delivered to the Arrowhead Springs property (Arrowhead Springs), which I understand is owned by the Nation, is obtained from seven locations within the Strawberry Canyon of the San Bernadino National Forest at elevations ranging from 4,160 feet to 5,260 feet by twelve collection facilities. These facilities include two tunnels and ten boreholes. An approximately 7.3-mile

conveyance system (BlueTriton's System) – which I understand is owned and operated by BlueTriton Brands, Inc. (BlueTriton) – conveys water by gravity from these facilities to reservoirs owned by the Nation at the top of Arrowhead Springs that hold water to be delivered for uses on the property through the Nation's gravity-fed system ("Nation's System"), as well as to BlueTriton storage silos and a truck loading facility at the mountain's base. Water that is excess, in that it is neither used by BlueTriton nor by the Nation, is released back into the watershed. The Nation releases any unneeded water delivered to it by BlueTriton into Hot Springs Creek, a tributary adjacent to the Nation's water reservoirs which empties into East Twin Creek at the south side of Arrowhead Springs. These structures and their locations are depicted on the map attached hereto as **Exhibit 8**.

7. In connection with my work analyzing Arrowhead Springs water resources, I have evaluated the contracts, permits, agency actions (including official agency notices), and responses thereto in connection with the delivery of water to Arrowhead Springs. I have reviewed an agreement dated September 26, 1931, between the Arrowhead Springs Corporation and the California Consolidated Water Company, and under that agreement, twenty (20) percent of the total water collected from the BlueTriton System currently operated by BlueTriton must be diverted to Arrowhead Springs. A true and correct copy of the agreement is attached as **Exhibit 6** to the Declaration of Rodney Garton In Support of Motion to Intervene and Motion for Preliminary Injunction filed concurrently with this Declaration.

8. Also, in connection with my work for the Nation, I assessed the historical production for each water delivery facility used by BlueTriton to deliver water to the Nation, from 1995 to 2020, excluding 2004 because the BlueTriton System was rendered nonoperational due to a fire in 2003. Year to year, between 1995 and 2020, the amount of water delivered to the Nation varied from 87 Acre Feet per Year (AFY) to 505 AFY.

9. It is my understanding that BlueTriton ceased using water from Strawberry Canyon for commercial bottling purposes in 2023 pursuant to State Water Resources Control Board (SWRCB) Order WR 2023-0042, a true and correct copy of which is attached hereto as **Exhibit 9**. However, SWRCB authorized BlueTriton to continue delivering water through the BlueTriton System to the Nation at Arrowhead Springs to meet its delivery requirements. *Id.* at 89-91.

10. The Nation's other existing water supplies located on Arrowhead Springs are unlikely to meet the government, recreational, cultural, and wildfire protection demands of the property that are presently met by the water supplies delivered by BlueTriton through the BlueTriton System. The Nation cannot rely on its other existing water supplies, including wells, that are located on Arrowhead Springs to meet the demands on Arrowhead Springs due to the low and unreliable production and temperature, high levels of contaminants in the water, and lack of infrastructure. Several wells have shown elevated levels of arsenic and fluoride, which without treatment make them unsuitable for potable uses and irrigation. Further, the Nation does not have the infrastructure to connect some wells to the Nation's System and to treat these other water sources, and such infrastructure cannot be put into place by January 15, 2025.

11. I reviewed the Notice of Denial of Application for Use and Occupancy of National Forest Lands; Termination of Special Use Permit FCD728503 (Notice of Denial), issued by the United States Forest Service (USFS) on July 26, 2024. The document purports to require BlueTriton to remove BlueTriton's System from the San Bernadino National Forest, which is located on lands owned by the USFS. A true and correct copy of the Notice of Denial is attached hereto as **Exhibit 10**. I have also reviewed the letters by the USFS modifying the Notice of Denial dated August 2, 2024, and August 26, 2024.

12. In response to the Notice of Denial, BlueTriton submitted a decommissioning plan to the USFS in October 2024, a true and correct copy of

which is attached hereto as **Exhibit 11**. According to the document BlueTriton submitted, the decommissioning plan, as proposed, is set to begin on January 16, 2025, and conclude on December 26, 2025. *Id.*, Appendix G. The decommissioning plan requires over 10,000 helicopter flights; provision of on-site materials such as fuel, oil, cement, and sanitary facilities; and removal and staging of hazardous waste on-site and at the Nation's facilities. As stated on page 8 of the decommissioning plan, BlueTriton "anticipates a minimum of 40 flights per day (200 per week) for the duration of the decommissioning project" that is scheduled to take 12 months.

13. Based on my analysis, removing the BlueTriton System may cause environmental damage and safety risks, including, but not limited to, destroyed habitat, erosion and sedimentation, landslides, hydrologic impacts, and other irreparable harm. It would be appropriate for the agency to analyze these potential impacts before BlueTriton decommissions the BlueTriton System. The decommissioning plan did not analyze these potential impacts.

14. Based on my analysis, I have determined that decommissioning the BlueTriton System may have impacts on cultural and historical resources that should be evaluated prior to its decommissioning. It is my understanding through analysis of Arrowhead Springs, and the Nation's historical connection to the area, that Arrowhead Springs and the property surrounding the BlueTriton System are indigenous to the Nation and its people. Further, the decommissioning of the BlueTriton System will have impacts to the Arrowhead Springs Hotel, which may have historical value to the San Bernadino region, as it will take away its primary water source.

15. NRCE believes that there are benefits from keeping the BlueTriton System, though perhaps under modified operation, and that such potential benefits should be analyzed prior to decommissioning. For example, a potential benefit of leaving the BlueTriton System in place is that the system could be reconfigured to

discharge water into the upper watershed and improve Strawberry Creek's hydrology.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 3rd day of January 2025 at Berkeley, California.

_____
PAUL HAMAI

DECLARATION OF PAUL HAMAI IN SUPPORT OF MOTION TO INTERVENE AND MOTION FOR PRELIMINARY INJUNCTION            -7-