1  TODD KIM
   Assistant Attorney General
2  United States Department of Justice
   Environment & Natural Resources Division
3
4  TYLER M. ALEXANDER (CA 313188)
   MAGGIE C. WOODWARD (MD #2212130001)
5  Trial Attorneys
   Natural Resources Section
6  Environment & Natural Resources Division
   P.O. Box 7611
7  Washington, D.C. 20044-7611
8
9  *Attorneys for Defendants*

10         **IN THE UNITED STATES DISTRICT COURT**
11        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
12           **EASTERN DIVISION – RIVERSIDE**

13

14  BLUETRITON BRANDS, INC.,

15         Plaintiff,                    2:24-cv-09720-JGB-DTB

16
17         v.                           **DEFENDANTS'**
                                        **OPPOSITION TO**
18  UNITED STATES FOREST SERVICE, *et*   **YUHAAVIATAM OF SAN**
    *al*.,                              **MANUEL NATION'S**
19                                      **MOTION TO INTERVENE**
20         Defendants.

21

22

23

24

25

26

27

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND ..........................................................................................3

LEGAL STANDARDS ...................................................................................................5

ARGUMENT ...................................................................................................................6

    I.     The Nation May Not Intervene By Right..........................................................7

        a.     The Nation does not have a "significantly protectable interest" in the outcome of BlueTriton's challenge to the Notice of Denial ..........................................................................7

        b.     Whatever water rights the Nation possesses, the Nation's ability to seek recognition of those rights from the State of California or seek its own Special Use Permit to access those rights on the San Bernardino National Forest are not impaired by the denial of BlueTriton's request for a Special Use Permit ...............................................................9

        c.     The Nation's interests in BlueTriton's pipeline are adequately represented by BlueTriton .....................................11

    II.    The Court Should Also Deny Permissive Intervention......................14

CONCLUSION ............................................................................................................16

# TABLE OF AUTHORTIES

**Cases**

*Anaheim Union Water Co. v. Fuller*,
   150 Cal. 327 (1907) ...........................................................................10

*Animal Legal Def. Fund v. Otter*,
   300 F.R.D. 461 (D. Idaho 2014) ......................................................14

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ................................................ 5, 11, 13

*Arizona v. Navajo Nation*,
   599 U.S. 555 (2023) ...........................................................................14

*Arizonans for Fair Elections v. Hobbs*,
   335 F.R.D. 269 (D. Ariz. 2020) ........................................................13

*Cal. Or. Power Co. v. Beaver Portland Cement Co.*,
   295 U.S. 142 (1935) ...................................................................... 7, 10

*California ex rel. Van de Kamp v. Tahoe Reg'l Plan. Agency*,
   792 F.2d 775 (9th Cir. 1986) ......................................................... 6, 13

*Callahan v. Brookdale Senior Living Communities, Inc.*,
   42 F.4th 1013 (9th Cir. 2022) ...........................................................16

*Cooper v. Newsom*,
   13 F.4th 857 (9th Cir. 2021) .............................................................15

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ............................................................15

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ................................................................6

*Perry v. Proposition 8 Off. Proponents*,
   587 F.3d 947 (9th Cir. 2009) .................................................... passim

*Planned Parenthood of Wis., Inc. v. Kaul*,
   942 F.3d 793 (7th Cir. 2019) ............................................................13

*Prete v. Bradburry*,
   438 F.3d 949 (9th Cir. 2006) ............................................................12

*Spangler v. Pasadena City Bd. of Educ.*,
   552 F.2d 1326 (9th Cir. 1977) ...................................................... 6, 16

*Sweet v. Cardona*,
   121 F.4th 32 (9th Cir. 2024)..........................................................................7

*United States ex rel. Richards v. De Leon Guerrero*,
   4 F.3d 749 (9th Cir. 1993) ...........................................................................16

*United States v. Alpine Land & Reservoir Co.*,
   431 F.2d 763 (9th Cir. 1970) .........................................................................9

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002)................................................................... 8, 14

*Washington v. U.S. Food & Drug Admin.*,
   670 F. Supp. 3d 1150 (E.D. Wash. 2023) ................................................ 15, 16

**Regulations**

5 U.S.C. § 558 .................................................................................................2

**Rules**

Fed. R. Civ. P. 24 ............................................................................................5

1

## **INTRODUCTION**

Beginning in 1930, BlueTriton Brands, Inc. and its predecessors sought and received a series of Special Use Permits to operate a pipeline on the San Bernardino National Forest.  ECF No. 15-6 at 21.  Until recently, BlueTriton operated the pipeline to divert water that the company claims to own off the Forest for bottling and commercial sale.  *Id.*  But in 2015, in response to complaints and a petition signed by more than 500 people, the California State Water Resources Control Board investigated BlueTriton's claimed water rights.  *Id.* at 2.  After a lengthy adversarial process, the Water Board concluded that BlueTriton lacks rights to the water it was diverting from Strawberry Canyon.  *Id.* at 75-85.  BlueTriton has continued to divert large volumes of water from Strawberry Canyon since, despite no longer bottling the water.  ECF No. 15-3 at 2.

The California Water Board's research was exhaustive.  According to the Water Board's findings, in 1931, the Arrowhead Springs Hotel property's owners and the California Consolidated Water Company (one of BlueTriton's predecessors in interest) executed an agreement requiring 20% of all water developed from Strawberry Canyon to be delivered to the Arrowhead Springs Hotel property.  ECF No. 15-6 at 12.  That agreement has continued since.  In 2016, the Yuhaaviatam of San Manuel Nation acquired the Arrowhead Springs property, along with contractual rights to water deliveries from BlueTriton, *id.* at 21,[1] whose diversions impact all riparian properties downstream from the collection points.  In recent years, nearly all diverted water has been delivered to the Arrowhead Springs Hotel property for undisclosed purposes.  ECF No. 15-3.

---

[1] The Nation has thus been receiving water deliveries from BlueTrition and its predecessors for less than a decade, not "nearly a century."  *Contra* Mot. to Intervene, ECF No. 64 at 13.

BlueTriton's most recent Special Use Permit expired by its own terms at midnight on August 24, 2023.  ECF No. 15-4 at 2.  Because BlueTriton had timely applied for a new permit, ECF No. 15-5, the expired permit continued under the Administrative Procedure Act (APA) while the Forest Service reviewed BlueTriton's application and decided whether to issue a new permit.  5 U.S.C. § 558.  When BlueTriton's application was ultimately denied for failure to provide necessary information, ECF No. 15-3, the expiring permit's termination provisions kicked in.  ECF No. 15-4 at 12.  Those termination provisions require BlueTriton to cease its diversions, to remove the pipeline from the Forest, and to "restore the site." *Id.*  The Forest Service is reviewing BlueTriton's removal plan and expects to approve a plan in the months to come.

The Nation says that, by acquiring the Arrowhead Springs Hotel property, the Nation also acquired a contractual right to water deliveries from BlueTriton.  But even if that is true, the Nation was not a party to BlueTriton's expired Special Use Permit or the denied permit application.  For this reason, the Nation has no rights under the permit and the Nation's water rights—whatever they are—are not implicated by the denial.  More, because neither the expired permit nor the denial say anything about the Nation's water rights, the Nation's ability to protect those rights through future administrative proceedings before California (or through seeking a permit from the Forest Service) are not implicated here.  To the contrary: restored surface flows after BlueTriton's upstream diversion ends will restore East Twin Creek and allow the Nation to exercise the Arrowhead Springs Hotel property's riparian rights.  If the Nation needs access to the San Bernardino National Forest for its own diversion, the Nation may seek its own permit.  Finally, because BlueTriton is already challenging the denial and has already asked this Court to allow the diversions to continue indefinitely, the Nation's interests in the same are adequately represented.

The government does not oppose the Nation participating in this case as an amicus curiae and sharing its perspective with the Court in that role. But the Nation has not met the requirements for party status under Federal Rule of Civil Procedure 24 and has no right to challenge the denial of a permit it did not seek. For these reasons, as set forth fully below and in Defendants' opposition to the Nation's motion for a preliminary injunction filed along with this opposition, this Court should deny the Nation's motion to intervene.

## FACTUAL BACKGROUND

The factual background for the development of BlueTriton's pipeline, the previous Special Use Permits, and the denial of BlueTriton's most recent request for a Special Use Permit are detailed in Defendants' opposition to BlueTriton's motion for a preliminary injunction, ECF No. 15 at 4-9. Defendants incorporate that background here by reference.

But to be clear: the final agency action before this Court is the Forest Service's July 26, 2024, Notice of Denial, ECF No. 15-3. The only decision the Forest Service reached in that Notice of Denial was to deny BlueTriton's February 21, 2023, application for a Special Use Permit to occupy National Forest System lands on the San Bernardino National Forest. *Id.* at 1.[2] The Forest Service explained that it was denying BlueTriton's application because BlueTriton refused to provide "information necessary to assure compliance with BlueTriton's existing permit, and evaluate BlueTriton's application for a new permit." *Id.* The Forest Service's Notice of Denial did not "terminate[] Plaintiff's special use

---

[2] The Nation errs when it characterizes the Notice of Denial as denying renewal. *See, e.g.*, Mot. to Intervene at 8. BlueTriton's 2023 Special Use Permit was non-renewable. *See* ECF No. 15-4 at 2 ("This permit is not renewable."). The permit also explained that "[i]ssuance of a new permit is at the sole discretion of the authorized officer" and could only occur following specific findings by the authorized officer. *Id.*

authorization." *Contra* Mot. to Intervene at 5, ECF No. 64. BlueTriton's Special Use Permit expired on its own terms on August 24, 2023. ECF No. 15-4 at 2. The termination provisions are spelled out in that same document. *Id.* at 12 (termination occurs upon "expiration of the permit by its terms on a specified date").

The Nation had no rights or obligations under the 2023 Special Use Permit. *See* ECF No. 15-3 at 2 ("BlueTriton is therefore solely responsible for complying with the terms of the permit"). The permit names only BlueTriton as the holder, *id.* at 1, and was "not assignable or transferable." ECF No. 15-4 at 2; *see also id.* at 3 ("Any transfer of title to the improvements covered by this permit shall result in termination of the permit."). The permit likewise did not "confer any rights on any third party as a beneficiary." *Id.* at 4.

The Nation was not a party to the application for a new permit for BlueTriton's pipeline. The application was from "BlueTriton Brands, Inc. ('Permit Holder') to continue using and occupying U.S. Forest Service ('USFS') lands in the San Bernardino National Forest ('SBNF')[.]" ECF No. 15-5. Of course, because the Nation did not hold the prior permit, the Nation could not apply to "continue" the use. *See* ECF No. 15-3 at 2 ("To be clear, BlueTriton is the current permit holder and applicant for the new permit.").

Nowhere does the Notice of Denial discuss the Nation's alleged water rights or reach any determination about the Nation's right to seek access for those rights across National Forest System lands. *See generally id.* While the Notice of Denial does discuss the Arrowhead Springs Hotel property, that discussion is in the context of asking BlueTriton to explain why water deliveries had increased "from 4.5 million gallons in December of 2023 to 9.5 million gallons in May of 2024" despite the facts that the property "has no irrigated agriculture, no industrial uses, no residences, and no municipalities." *Id.* at 2; *see also id.* ("The hotel and

conference facility on the property is not operating, and there is no explanation of where the millions of gallons of water per month are going.").  The only mention of the Nation is on page 2, where the Forest Service rejected BlueTriton's assertion "that responsibility [to explain the use] lies with the Tribe." *Id.*  As the Forest Service explained, "BlueTriton is the current permit holder and applicant for the new permit.  BlueTriton is therefore solely responsible for complying with the terms of the permit and also for providing information necessary for its application." *Id.*

## **LEGAL STANDARDS**

Rule 24 provides two mechanisms for intervention.  First, the reviewing Court:

> must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  Courts in the Ninth Circuit apply a four part test to assess petitions to intervene by right, asking: (1) whether the application is timely; (2) whether the applicant has "a significantly protectable interest relating to the property or transaction that is the subject of the action"; (3) whether the applicant is "situated such that the disposition of the action may impair or impede the party's ability to protect that interest"; and (4) whether the applicant's interests are "adequately represented by existing parties." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (quoting *Arakaki v. Cayetano,* 324 F.3d 1078, 1083 (9th Cir. 2003)).  "Failure to satisfy any one of the requirements is fatal to the application." *Id.* (citing *California ex rel. Van de Kamp v. Tahoe Reg'l Plan. Agency,* 792 F.2d 775, 781 (9th Cir. 1986)).

Second, the reviewing Court may grant permissive intervention under Rule 24(b)(2) "where the applicant 'shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *Perry*, 587 F.3d at 955 (quoting *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 839 (9th Cir. 1996)). Even if those requirements are met, the Court has broad discretion to consider other factors—such as "the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented by other parties." *Id.* (citing *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977)).

## **ARGUMENT**

The Court should deny the Nation's request for intervention as of right because the Nation was not a party to the expired Special Use Permit or an applicant for the denied permit, and so has no protectable interest implicated by the Notice of Denial.  The Notice of Denial also says nothing about the Nation's alleged water rights or the Nation's ability to access those rights on National Forest System Lands.  So resolution of this case will not impair the Nation's water rights or prevent the Nation from seeking its own permit.  Finally, because the Nation and BlueTriton have an identical objective—the pipeline's continued operation—the Nation's interests are adequately represented by BlueTriton.

The Court should also deny permissive intervention.  The Nation's claims do not raise common issues of law.  Rather, the Nation seeks to inject various claims that lack merit, have nothing to do with the agency action before the Court, and may delay a prompt final resolution of the case.  And the Court should also deny permissive intervention because, as already mentioned, the Nation's interests are adequately represented by BlueTriton.

For these reasons, this Court should deny the Nation's motion to intervene.

**I.     The Nation May Not Intervene By Right**

a.  The Nation does not have a "significantly protectable interest" in the
outcome of BlueTriton's challenge to the Notice of Denial.

The Nation lacks a significantly protectable interest in the outcome here
because the Nation had no rights under the expired permit and was not an applicant
for the denied permit.  BlueTriton's expired permit allowed the company to occupy
the San Bernardino National Forest with a pipeline, taking water from the Forest
under an alleged appropriative right.  Neither the expired permit nor the denied
application say anything about the water rights the Nation claims or water
deliveries to the Arrowhead Springs Hotel property.  Whatever contractual rights
exist between the Nation and BlueTriton, the Forest Service is a nonparty with no
rights or obligations under the contract and no duty to facilitate the contract.  Any
remedy the Nation may have under its agreement with BlueTriton would be against
the company, not the Forest Service.  For this reason, even assuming the Nation's
claimed water rights exist, those rights have no relation to BlueTriton's challenge
to the Notice of Denial.

"[A] proposed intervenor 'has a significant protectable interest in an action if
(1) it asserts an interest that is protected under some law, and (2) there is a
relationship between its legally protected interest and the plaintiff's claims.'"
*Sweet v. Cardona*, 121 F.4th 32, 48 (9th Cir. 2024).  Here, the Nation claims
various water rights, including riparian and appropriative rights.  The existence of
those rights is a question of California law; the Forest Service does not adjudicate
water rights.  *See Cal. Or. Power Co. v. Beaver Portland Cement Co.*, 295 U.S.
142, 162 (1935) (water rights in California are controlled by state law).  But
assuming they exist, the Nation's water rights have nothing to do with the
permitting decision in this case.  As the record makes plain, the past permits and

the denied permit were sought by BlueTriton under the company's own claimed appropriative right. *See, e.g.*, ECF No. 15-6 at 76-85 (California Water Board discussing BlueTriton's alleged appropriative rights); ECF No. 15-7 at 3 (2018 decision memo explaining that the Forest Service granted a permit with terms that "do not infringe upon water rights for developed spring water held by Nestlé under California state water law, as described by a recent report from the California Water Resources Control Board staff.").[3]

The past permits and the denial, ECF No. 15-3, are thus unrelated to the Nation's water rights. *See* Mot. to Intervene 15-16 (alleging riparian rights and "pre-1914 appropriative and groundwater rights"). This case is not like *United States v. City of Los Angeles*, the case cited by the Nation. 288 F.3d 391 (9th Cir. 2002). There, the Ninth Circuit held that a police officers' union had significant interests in a case when "the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty." *Id.* at 399. In contrast, the only dispute here is over the Forest Service's decision to deny a permit to BlueTriton for continued occupancy of the San Bernardino National Forest. *See* ECF No. 1 ¶¶ 24-27 (alleging the Notice of Denial violated the APA). The only entities required to take any actions are the Forest Service and BlueTriton; the Notice of Denial makes no demands on the Nation. *See* ECF No. 15-3 at 3 (discussing the Forest Service's and BlueTriton's responsibilities on termination of the Special Use Permit). Neither does the Notice of Denial (nor any other Forest Service decision) purport to decide the Nation's water rights. Put simply, those water rights were irrelevant to the Notice of Denial and are thus irrelevant here.

---

[3] After the 2018 Decision Memo, the California Water Board concluded that BlueTriton (Nestlé's successor) does not hold appropriative water rights to spring water in Strawberry Canyon. *See* ECF No. 15-6.

This case is more like *United States v. Alpine Land & Reservoir Co.*, 431 F.2d 763 (9th Cir. 1970).  There, the Pyramid Lake Paiute Tribe sought to intervene in a quiet title action between the United States and various individuals who claimed an interest in the Carson River.  *Id.* at 764-65.  The Tribe argued that it had rights to the Truckee River, which could be impacted by the litigation, including through the "Truckee River Diversion Canal, whereby, under given circumstances, water would be diverted from the Truckee River to the Lahontan Reservoir on the Carson River."  *Id.* at 766.  The Ninth Circuit held that these interests were not sufficient to warrant intervention by right.  *Id.* at 768-69.  As the court explained, the Tribe did not show that its water rights—which were not before the court—would be altered by the settlement of a dispute between different parties over different water rights.  *Id.* at 769.  So too here; whatever water rights the Nation holds, they are not diminished by the Notice of Denial and are not at issue.

Assuming the Nation correctly characterizes its rights under State law, those rights have no relation to the denied Special Use Permit.  For this reason, the Nation lacks a "significantly protectable interest" in this case and so may not intervene by right.

b. Whatever water rights the Nation possesses, the Nation's ability to seek recognition of those rights from the State of California or seek its own Special Use Permit to access those rights on the San Bernardino National Forest are not impaired by the denial of BlueTriton's request for a Special Use Permit.

Because the Notice of Denial says nothing about the Nation's water rights, a decision from this court upholding the Notice of Denial cannot impact the Nation's water rights.  It bears repeating the Forest Service does not adjudicate water rights and did not do so in denying BlueTriton's request for a permit.  The Forest Service

takes no position on the extent of the Nation's asserted water rights here, either. While the Nation may have riparian rights to East Twin Creek through its 2016 acquisition of the Arrowhead Springs Hotel property, the extent of those rights and the Nation's other asserted water rights are questions implicating state law. *See* Mot. to Intervene 15-16; *Cal. Or. Power Co.*, 295 U.S. 162.

More, the Forest Service's denial of a permit to BlueTriton does not impair the Nation's ability to seek its own permit. If the Nation needs a Special Use Permit to access its water rights on the San Bernardino National Forest, the Forest Service continues to invite the Nation to apply for one.

The Nation's arguments on this point conflate its alleged water rights (which are unaffected by the denial) with the Nation's desire to continue receiving water from BlueTriton. The Nation argues that "an unfavorable disposition" in this case would result in the Nation losing access to "its primary water supply (upon which the Nation has relied for well over a century)." Mot. to Intervene 17. This argument is wrong for at least three reasons. First, the Nation has not "relied" on water delivered by BlueTriton for well over a century, as the Nation only acquired the Arrowhead Springs Hotel property in 2016. Second, the Nation's claimed riparian rights that authorize diversions, *see* Mot. to Intervene 19, will not change, nor will the volume of water to which the Nation is entitled as a riparian owner. *See Anaheim Union Water Co. v. Fuller*, 150 Cal. 327, 334 (1907) (riparian owners may only divert their own share). Third, the Nation's most recent agreement with BlueTriton reflects that both parties understood that the California Water Resources Control Board had found that BlueTriton lacked a right to the waters at Strawberry Canyon, Declaration of Daniel J. Little ¶ 2, ECF No. 65-8 ("Decl. of Daniel J. Little"), and that BlueTriton may be ordered to cease pipeline operations. *Id.* ¶ 10; *see also id.* ¶ 13 (requiring BlueTriton to cooperate with the Nation's request for a Special Use Permit from the Forest Service if BlueTriton is ordered to

cease diversions).  This section thus makes clear that delivery of water to the Arrowhead Springs Hotel property was a contractual right with BlueTriton—dependent on BlueTriton's own tenuous claims—not a water right owned by the Nation enforceable against the Forest Service.

The Forest Service's Notice of Denial does not decide the Nation's rights or prevent the Nation from seeking its own permit.  So this Court's review of the Notice of Denial will also not decide the Nation's rights.  Whatever water rights the Nation holds, this case will leave them undisturbed.  For this reason as well, the Nation may not intervene by right.

c.  <u>The Nation's interests in BlueTriton's pipeline are adequately represented by BlueTriton.</u>

Both the Nation and BlueTriton share the same objective in this case: keeping BlueTriton's pipeline in place and water flowing from Strawberry Canyon. *Compare* ECF No. 64-1 at 15 ¶¶ 5-6; *with* ECF No. 1 at 10 ¶¶ A-C.  "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary."  *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 951 (9th Cir. 2009) (quoting *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003)).  The Nation does not make a compelling showing, and so the Court should deny intervention as of right.

BlueTriton, as the operator of the pipeline and the party deriving the largest economic benefit from continued operation, has every incentive to pursue its action challenging the Notice of Denial.  *See* Pl's. Mot. for Prelim. Inj., 24-25, ECF No. 2-1 ("Mot. for Prelim. Inj.") (describing BlueTriton's interests in the pipeline). BlueTriton's contractual relationship with the Nation reinforces that motivation. *See* ECF No 65-8.  Tellingly, the Nation makes no effort to show that BlueTriton

will fail to zealously pursue its challenge to the Notice of Denial.  *Cf. Prete v. Bradbury*, 438 F.3d 949, 957-58 (9th Cir. 2006) (considering and rejecting arguments that the defendant would not defend a statute as vigorously as the proposed defendant-intervenor).  And the arguments the Nation does make miss the mark.

The Nation first argues that it is differently situated because, while the California State Water Resources Control Board found that BlueTriton lacks an appropriative right, that same order concluded that the Nation has a riparian right. Mot. to Intervene 19.  The Nation is wrong; the California Water Board did not reach the issue of the Nation's water rights.  *See* ECF No. 15-6 at 87; *id.* at 76 ("This order does not adjudicate the San Manuel Band's land ownership or riparian right claims, and this order does not limit the Board or any other regulatory agency or court from taking any future actions regarding these claims.").  It is also strange the Nation would claim otherwise now when the most recent agreement between the Nation and BlueTriton included language to the contrary.  ECF No. 65-8 at 8 ("The Tribe is not a party to, nor is bound by the terms of the [California Water Board's] Order, and therefore, to the extent the Order refers to the Tribe's land ownership or riparian water rights claims, the Order does not adjudicate, resolve or quantify any of the Tribe's claims or rights as they relate to land and water.").  But in all cases, whether footed in an appropriative right (as BlueTriton claims) or riparian rights authorizing diversions (as the Nation claims), both seek the same remedy from this Court: an order requiring the pipeline to remain in place while water keeps flowing off the San Bernardino.  So this technical distinction does nothing to dispel the presumption of adequate representation.

The Nation next argues that it alleges different harms than BlueTriton because it fears "loss of life and property caused by the cut-off of water to Arrowhead Springs."  Mot. to Intervene 19-20.  Though those harms are not

BlueTriton's to assert, the company has done so all the same.  *See* Mot. for Prelim.
Inj. 27.  Thus rather than support the Nation's argument, this fact cuts the other
way.  *See Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003) (one of the
factors courts should consider is "whether the present party is capable and willing
to make" the arguments of proposed intervenor (citing *California ex rel. Van de
Kamp v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 778 (9th Cir. 1986)).

The Nation also argues that BlueTriton does not adequately represent its
interests because the Nation seeks different relief: an order that the water continue
to be siphoned off the San Bernardino via BlueTriton's pipeline and delivered to
the Nation "until an out-of-court solution can be reached or the Court has entered a
final decision in this case."  Mot. to Intervene 20.  That is, of course, the same
relief BlueTriton seeks in its motion for a preliminary injunction.  Pl's. Mem. in
Supp. of Mot. for Prelim. Inj. 2.  The Nation says the relief it seeks is "distinct and
narrower" because the Nation does not ask this court to enjoin the Notice of Denial
in its entirety.  Mot. to Intervene 5.  But that is, at best, a semantic distinction with
no real-world difference.  Both litigants ask this Court to allow an unauthorized
pipeline to continue to divert water from the National Forest System to the
Arrowhead Springs Hotel property.  Again, the identical relief sought by
BlueTriton and the Nation underscore that the Nation's interests are adequately
represented.  *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 275 (D. Ariz.
2020) (where proposed intervenors and the state had an "identical interest,"
proposed intervenors had the "unenviable task" of making a "'compelling
showing' that the state will inadequately represent their interests." (quoting *Perry*,
587 F.3d at 951; *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 (7th
Cir. 2019))).

Finally, the Nation argues that it will advance different theories because the
"Defendants owe a unique duty to the Nation that [they do] not owe to Plaintiff."

Mot. to Intervene 20. The United States does not hold the Arrowhead Springs Hotel property or the Nation's water rights associated with that property in trust for the Nation. Nor has the Nation identified an enforceable trust duty that the United States failed to perform. *See Arizona v. Navajo Nation*, 599 U.S. 555, 563-64 (2023) ("To maintain such a claim here, the Tribe must establish, among other things, that the text of a treaty, statute, or regulation imposed certain duties on the United States."). Neither does the fact that BlueTriton may press other arguments suggest that the Nation's interests are inadequately represented. Lawyers often disagree on litigation strategy; that fact alone cannot support intervention. *See Perry*, 587 F.3d at 954 ("To the extent that there is disagreement between the Proponents and the Campaign, it is best characterized as a dispute over litigation strategy or tactics. 'As we have held, mere [ ] differences in [litigation] strategy ... are not enough to justify intervention as a matter of right.'" (quoting *United States v. City of L.A.*, 288 F.3d 391, 402-03 (9th Cir. 2002)).

As its actions to date have shown, BlueTriton is zealously pursuing its challenge to the Forest Service's Notice of Denial. *Cf. Animal Legal Def. Fund v. Otter*, 300 F.R.D. 461, 465 (D. Idaho 2014) (citing "proactive filing of a motion to dismiss and the arguments they have advanced in support of that motion" as evidence that party adequately represented proposed intervenor's interests). This Nation's interests in continued operation of BlueTriton's pipeline are adequately represented by BlueTriton. The Nation has failed to make a compelling showing to the contrary. For this reason too the Court should deny the Nation's motion for intervention as of right.

## II.    The Court Should Also Deny Permissive Intervention

Finally, the Court should deny the Nation's request for permissive intervention because the Nation's claims lack a common question of law or fact

and because, as discussed above, the Nation's interests in the litigation are
adequately represented by BlueTriton.

"An applicant who seeks permissive intervention must prove that it meets
three threshold requirements: (1) it shares a common question of law or fact with
the main action; (2) its motion is timely; and (3) the court has an independent basis
for jurisdiction over the applicant's claims." *Cooper v. Newsom*, 13 F.4th 857, 868
(9th Cir. 2021) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998)).
The Nation's claims lack a common question of law or fact with those asserted by
BlueTriton.  On the law, BlueTriton only raises APA claims.  *See* ECF No. 1 at 8-9
(alleging the Forest Service has violated the APA for various reasons, including
assuming California's regulatory authority over water rights and failing to credit
BlueTriton's claimed water right).  The Nation, on the other hand, focuses on an
alleged failure to consult, asserting flawed theories footed in inapplicable statutes,
executive orders, and unsupported allegations of a trust relationship.  *See* ECF No.
64-1 at 11-15.[4]  On the facts, the Nation asserts separate water rights that have
nothing to do with the Notice of Denial.  *See* Mot. to Intervene 19 (acknowledging
the Water Board found BlueTriton lacked appropriative rights and asserting
different water rights).  The Nation's distinct allegations and legal theories thus
threaten to confuse and delay the proceedings.  *See Washington*, 670 F. Supp. 3d at
1155.

Even if the threshold requirements for permissive intervention were all met,
the Court has discretion to consider other relevant factors, including:

---

[4] While the Nation also asserts APA claims, it does so on different theories.  *See*
ECF No. 64-1 at 12-14; *see also Washington v. U.S. Food & Drug Admin.*, 670 F.
Supp. 3d 1150, 1155 (E.D. Wash. 2023), *aff'd in part, dismissed in part*, 108 F.4th
1163 (9th Cir. 2024) (denying permissive intervention where proposed intervenor
sought to advance distinct APA challenge from plaintiff).

the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Courts may also deny permissive intervention when, as here, the proposed intervenor's interests are adequately represented. *Perry*, 587 F.3d at 955 (citing *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993)).

As discussed above, the Nation's alleged water rights are not affected by the Notice of Denial, the Nation's interests in BlueTriton's pipeline are adequately represented by BlueTriton, and the Nation's claims would inject irrelevant issues that could delay a prompt resolution of the case. For these reasons also, the Court should deny permissive intervention.

## **CONCLUSION**

The Forest Service's July 26, 2024, Notice of Denial denied BlueTriton's application to continue to occupy the San Bernardino National Forest. As the Forest Service explained, that denial followed BlueTriton's consistent refusal "to provide adequate information to consider [BlueTriton's] application." ECF No. 15-3 at 1. The Nation was not a party to the expired Special Use Permit nor an applicant for the denied permit. The Notice of Denial says nothing about the Nation's alleged water rights, which are beyond the Forest Service's jurisdiction

and had nothing to do with BlueTriton's permit application.  Neither does the Notice of Denial prevent the Nation from seeking its own permit.  For these straight-ahead reasons, the Nation lacks a protectable interest here, and whatever water rights the Nation holds will not be impaired by the outcome.  The Court should thus deny intervention as of right.

More, the Nation's interest in water delivered via BlueTriton's pipeline is derivative of BlueTriton's alleged right and rooted in a hundred-year-old contract that the Nation only acquired in 2016 and knew was on shaky ground.  *See* ECF 65-8 at ECF No. 1.  The Forest Service is not a party to the contract, has no rights or obligations under the contract, and has no duty to facilitate the water deliveries required by the contract.  In any event, the Nation's interest in the pipeline is adequately represented by BlueTriton, who owns the pipeline and is zealously pursuing its appeal of the Forest Service's Notice of Denial.  For this reason too, the Court should deny intervention as of right.

Finally, the Nation seeks to raise irrelevant factual and legal arguments that threaten to delay a prompt resolution of the case.  So the Court should deny the Nation's request for permissive intervention as well.

Defendants have no objection to the Nation participating as an amicus curiae.  But the Nation has no right to party status.  The Court should deny the Nation's motion to intervene.

Submitted this 10th day of January, 2025,


TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division


 /s/ *Tyler M. Alexander*
TYLER M. ALEXANDER (CA 313188)

Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0238
tyler.alexander@usdoj.gov

MAGGIE C. WOODWARD
(MD #2212130001)
Trial Attorney
Natural Resources Section
Maggie.woodward@usdoj.gov
(202) 305-4224
P.O. Box 7611
Washington, D.C. 20044-7611

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Defendants certifies that this brief is 17 pages, which complies with the page limit in this Court's standing order dated March 24, 2016, ECF No. 57.

 /s/ *Tyler M. Alexander*
TYLER M. ALEXANDER

*Attorney for Defendants*