SOMACH SIMMONS & DUNN
A Professional Corporation
STUART L. SOMACH, ESQ. (SBN 90959)
MAXIMILIAN C. BRICKER, ESQ. (SBN 350150)
500 Capitol Mall, Suite 1000
Sacramento, CA 95814
ssomach@somachlaw.com
mbricker@somachlaw.com

MICHAEL W. DAUGHERTY, ESQ. (Co. Bar 49074)
*Pro Hac Vice* Pending
RAMSEY L. KROPF, ESQ. (Co. Bar 21528)
*Pro Hac Vice* Pending
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone: (916) 446-7979
Facsimile: (916) 446-8199
mdaugherty@somachlaw.com
rkropf@somachlaw.com

Attorneys for [PROPOSED] Plaintiff-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally
recognized as SAN MANUEL BAND OF MISSION INDIANS

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION – RIVERSIDE**

| | |
|---|---|
| BLUETRITON BRANDS, INC., | Case No.: 2:24-cv-09720-JGB-DTB |
| Plaintiff, | **REPLY OF YUHAAVIATAM OF SAN MANUEL NATION IN SUPPORT OF MOTION TO INTERVENE AND MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| UNITED STATES FOREST SERVICE, | |
| RANDY MOORE, in his official capacity as Chief of the U.S. Forest Service, | Hearing Date:    January 13, 2025<br>Hearing Time:   9:00 AM<br>Courtroom:      1<br>Judge: Hon. Jesus G. Bernal |
| CHRISTOPHER FRENCH, in his official capacity as Deputy Chief for the National Forest System of the U.S. Forest Service, | Action Filed:  August 6, 2024 |
| JENNIFER EBERLEIN, in her official capacity as Regional Forester for the Pacific Southwest Region of the U.S. Forest Service, | |

SOMACH SIMMONS & DUNN
A Professional Corporation

1    DANELLE HARRISON, in her official
     capacity as Forest Supervisor of the San
2    Bernardino National Forest of the
     U.S. Forest Service,

3
     MICHAEL NOBLES, in his official
4    capacity as Front Country District
     Ranger of the U.S. Forest Service,

5
                              Defendants.
6

7    YUHAAVIATAM OF SAN MANUEL
     NATION, a federally recognized Indian
8    tribe, also federally recognized as SAN
     MANUEL BAND OF MISSION
9    INDIANS,

10        [PROPOSED] Plaintiff-Intervenor.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SOMACH SIMMONS & DUNN
A Professional Corporation

REPLY BRIEF OF YUHAAVIATAM OF SAN MANUEL NATION
IN SUPPORT OF MOTION TO INTERVENE

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

    A.    The Agency Action in Question Directly Implicates the Nation's Protectable Interests Relating to Property that Is Subject to the Action ................................................................... 2

    B.    The Nation Is Actively Pursuing Every Potential Avenue to Obtain an Out-of-Court Solution for Continued Deliveries of the Subject Water, Including Seeking a Special Use Permit from Defendants, But Requires Additional Time ......................... 4

    C.    The Threat of Irreparable Harm from a Lack of Water to Combat Wildfire Is Real and Outweighs any Harm that Strawberry Canyon May Suffer from Continued Deliveries During the Pendency of this Case ........................................ 6

    D.    Defendants Have Not Justified a Need to Terminate Arrowhead Springs' Primary Water Supply on January 15, 2025 ............................................................................................... 8

    E.    The Nation's Interests Are Not Adequately Represented by the Plaintiff ............................................................................. 10

    F.    Defendants Downplay the Scope of the Decommissioning Plan and Its Potential to Harm the Nation, All While Encouraging the Nation to Apply for a SUP that Cannot Be Approved Without Infrastructure ........................................... 11

    G.    The Nation Is Likely to Succeed on the Merits in Its Motion for a Preliminary Injunction .................................................. 12

II.   CONCLUSION ...................................................................................... 16

Table of Exhibits ........................................................................................ 17

SOMACH SIMMONS & DUNN
A Professional Corporation

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Backcountry Against Dumps v. United States BIA*,
  No. 20-CV-2343 JLS (DEB), 2021 U.S. Dist. LEXIS 112202, at *13
  (S.D. Cal. June 14, 2021) ....................................................................... 3

*Chamber of Com. of U.S. v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ............................................................... 15

*Chen v. INS*,
  95 F.3d 801, 805 (9th Cir. 1996) ........................................................... 14

*Cherokee Nation v. Georgia*,
  30 U.S. 1, 39 (1831) .............................................................................. 15

*Chrysler Corp. v. Brown*,
  441 U.S. 281, 303-04 (1979) ................................................................. 14

*Diné Citizens Against Ruining Our Env't*,
  932 F.3d 843, 853-56, 860 (9th Cir, 2019)............................................... 3

*Indep. Meat Packers Ass'ns v. Butz*,
  526 F.2d 228, 234 (8th Cir. 1975) ......................................................... 14

*Kescoli v. Babbitt*,
  101 F.3d 1304, 1310, 1312 (9th Cir, 1996)............................................... 3

*Nebraska v. Su*, 121 F.4th 1, 16 (9th Cir. 2024)......................................... 15

*Pit River Tribe v. United States Forest Serv.*,
  469 F.3d 768, 788 (9th Cir. 2006) ......................................................... 15

*River Runners for Wilderness v. Martin*,
  593 F.3d 1064, 1071 (9th Cir. 2010) ..................................................... 15

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810, 818 (9th Cir. 2001).............................................................. 2

*W. Watersheds Project v. BLM*,
  629 F. Supp. 2d 951 (D. Ariz. 2009) ..................................................... 14

**Regulations**

36 C.F.R. § 219.4(a)(2)................................................................................ 15

SOMACH SIMMONS & DUNN
A Professional Corporation

Proposed Plaintiff-Intervenor Yuhaaviatam of San Manuel Nation, a federally recognized Indian tribe, also federally recognized as the San Manuel Band of Mission Indians (the "Nation")[1], by and through its undersigned counsel of record, hereby replies to the briefs opposing the Nation's Motion to Intervene and corresponding Motion for Preliminary Injunction filed by Defendants (and Amicus Save Our Forest Association [SOFA]) in the captioned matter.  ECF Nos. 80-82.

## I.    INTRODUCTION

The reason the Nation seeks to intervene and obtain preliminary injunctive relief in this matter is simple: after August 26, 2024, when Defendants modified the decision to allow for continued deliveries of the Subject Water through BlueTriton's facilities for the Nation's use at Arrowhead Springs through January 15, 2025, *see* ECF No. 27-1, the Nation reasonably believed Defendants understood the critical importance of the Subject Water to the Nation, not simply for cultural and governmental uses, but to protect Arrowhead Springs and the community-at-large from wildfire.  Accordingly, the Nation believed Defendants would work with the Nation to develop an out-of-court solution allowing for continued water deliveries *beyond* January 15, 2025, whether that be in the form of another extension or through some other means.  That reasonable expectation did not materialize, as it became clear over time that Defendants were unwilling to collaborate to find a solution that would allow for continued deliveries, regardless of the merits of the Nation's proposals, leaving the Nation no choice but to seek relief from this Court to avoid irreparable harm upon the expiration of the temporary authorization.

The following sections demonstrate why Defendants' arguments in opposition to the Nation's Motion to Intervene and corresponding Motion for

---

[1] Any other shorthand or abbreviated terms are defined in the Nation's Notice and Motion to Intervene; Memorandum of Points and Authorities; and Request for Order Shortening Time (Motion to Intervene).  ECF No. 64.

SOMACH SIMMONS & DUNN
A Professional Corporation

Preliminary Injunction lack merit, and why the Court should grant intervention and
issue a preliminary injunction against Defendants.

**A.    The Agency Action in Question Directly Implicates the Nation's
Protectable Interests Relating to Property that Is Subject to the Action**

Defendants' opposition to the Nation's intervention largely rests on the
premise that the Nation's water rights are not implicated by Defendants' Notice of
Denial and that the Nation lacks a legal right in BlueTriton's special use permit
(SUP).  ECF No. 80 at 2, 7-9.  This is an unduly narrow conception of the legally
protectable interest element of intervention.  The Nation has an undisputed
contractual right to obtain water from BlueTriton that will be rendered meaningless
if the Notice of Denial is not enjoined (in some fashion), which meets the third-
party beneficiary test established by the Ninth Circuit.  *See Sw. Ctr. for Biological
Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

The Notice of Denial specifically acknowledges that BlueTriton delivers
water to the Nation's Arrowhead Springs and misrepresents the facts surrounding
the Nation's operations there.  ECF No. 1-1 at 2-3.  Defendants well know that the
Nation relies on water deliveries from BlueTriton to operate Arrowhead Springs
and that the Nation and surrounding communities rely on the Subject Water for
wildfire suppression purposes.  Indeed, Defendants went so far as to ask BlueTriton
for information about the Nation's water use—without ever asking the Nation, let
alone consulting with the Nation before taking an adverse action that would cease
all water deliveries to the Nation's Arrowhead Springs.  ECF No. 65-4 at 2.  This
critical reliance upon the Subject Water is exactly why Defendants twice modified
the Notice of Denial to allow BlueTriton to continue delivering water to the Nation
while it could explore other water supply options.  ECF Nos. 15-21, 27-1.  This
reliance is also why Defendants engaged with the Nation in 2016 when considering
BlueTriton's prior SUP, apparently then recognizing the Nation's distinct interests

SOMACH SIMMONS & DUNN
A Professional Corporation

1    in the permit, and the federal government's trust responsibility to a federally-

2    recognized tribe.  ECF No. 81-4.

3        As described in the Nation's pending motions, the owners of Arrowhead

4    Springs have received and relied on the Subject Water continuously since 1931, and

5    it would require significant time (a minimum of three years) if the Nation must

6    resort to securing municipal connections or developing new infrastructure that

7    would allow the Nation to divert water from Strawberry Creek without

8    BlueTriton's infrastructure.  *See* Declaration of Joanne Michelle Hickey in Support

9    of Nation's Motion to Intervene and Motion for Preliminary Injunction (Hickey

10   Decl.) at ¶¶ 6-9; ECF No. 65-6 at ¶ 12; ECF No. 65-10 at ¶ 10.  The Notice of

11   Denial and subsequent modifications constitute one agency action that directly

12   implicates the Nation's interests of protecting its primary water supply for

13   Arrowhead Springs.  Ninth Circuit precedent holds that "[a] [t]ribe's sovereign

14   interest is precisely the type of interest that . . . has [been] identified for protection

15   under the Federal Rules."  Citing *Diné Citizens Against Ruining Our Env't*,

16   932 F.3d 843, 853-56, 860 (9th Cir, 2019); *Kescoli v. Babbitt*, 101 F.3d 1304, 1310,

17   1312 (9th Cir, 1996)); *Backcountry Against Dumps v. United States BIA*, No. 20-

18   CV-2343 JLS (DEB), 2021 U.S. Dist. LEXIS 112202, at *13 (S.D. Cal. June 14,

19   2021) (*Backcountry*).  Not only is the Nation's access to SBNF to exercise its water

20   rights implicated by the Notice of Denial, so is its sovereignty. The agency's

21   adverse decision will not only halt water supplies for Arrowhead Springs,

22   threatening the Nation's right to control and protect tribal resources and cultural

23   values, but also the property itself (and surrounding area) from wildfire.  *See*

24   *generally* McCleary Decl., ECF No. 65-9; Declaration of Keith Alexander in

25   Support of Nation's Motion to Intervene and Motion for Preliminary Injunction

26   (Alexander Decl.) at ¶¶ 3-4.  As in the *Backcountry* case, here "[t]he [Nation]'s

27   interest is tied to its very ability to govern itself, sustain itself financially, and make

28   decisions about its own natural resources."  *Backcountry*, at *15.

REPLY BRIEF OF YUHAAVIATAM OF SAN MANUEL NATION
IN SUPPORT OF MOTION TO INTERVENE                                    -3-

SOMACH SIMMONS & DUNN
A Professional Corporation

**B.** **The Nation Is Actively Pursuing Every Potential Avenue to Obtain an Out-of-Court Solution for Continued Deliveries of the Subject Water, Including a SUP from Defendants, But Requires Additional Time**

Contrary to Defendants' assertions, *see* ECF No. 80 at 14 ("[i]f the Nation needs a Special Use Permit to access its water rights on the San Bernardino National Forest, the Forest Service continues to invite the Nation to apply for one," US Opp. to Order Shortening Time, ECF No. 66 at 2), the Nation has worked tirelessly with Defendants to develop a solution that allows for continued deliveries of the Subject Water beyond January 15, 2025, *including* by laying the groundwork to secure its own SUP, an option that USFS's parent agency, the USDA, affirmatively encouraged, assuring the Nation's leaders that this was a viable vehicle that could ensure continued water deliveries beyond January 15, 2025. *See generally* Declaration of Allison Binney in Support of Motion to Intervene and Motion for Preliminary Injunction (Binney Decl.) at ¶¶ 29-35, 40; Hickey Decl. at ¶¶ 7-9. Indeed, the Under Secretary for the USDA indicated Defendants could further modify the Notice to continue water deliveries while the Nation took the time needed to pursue a SUP. Binney Decl. at ¶¶ 32, 40. And contrary to Defendants' assertion, the Nation did not "reject" this path, but rather, was involved in preparing an application for the SUP, as the USDA officials said could be approved expeditiously. Binney Decl. at ¶¶ 32-40; Hickey Decl. at ¶ 7.

Instead, at every turn, Defendants have discounted the Nation and come up with new reasons as to why the Nation is not entitled to a SUP or why Defendants cannot re-extend the temporary authorization. *See generally* Binney Decl. The last reason involved questioning the Nation's very water rights, *id.* at ¶ 42, which Defendants lack standing to do, as they have conceded, ECF No. 80 at 7, as they lack authority to determine water rights, and that the SWRCB has itself acknowledged. *See* ECF No. 15-6 at 91 ("[the Nation] has riparian rights that authorize diversions through these facilities for beneficial uses on the Arrowhead Springs Hotel property"). The Nation also has aboriginal water rights that would

SOMACH SIMMONS & DUNN
A Professional Corporation

allow such deliveries.  Finally, Defendants' alleged invitation is disingenuous—it is contradictory for Defendants to invite the Nation to apply for a SUP, on the one hand, and then actively try to remove the facilities that the Nation would be using for a prospective SUP, on the other.

The Nation has explored and continues to explore alternative solutions, such as connecting to a municipal system, should the Nation be unable to secure authorization to use and access SBNF lands from Defendants.  *See* Binney Decl. at ¶¶ 15, 19, 26-27; Hickey Decl. at ¶ 6; ECF No. 65 at ¶ 22.  Regardless of what solution is ultimately reached, it is going to take significant time to attain.  *See* Binney Decl. at ¶¶ 14-15, 24, 31; Hickey Decl. at ¶ 6; ECF No. 65 at ¶ 22.  As such, the Nation merely asks the Court to effectively impose a stopgap so that there is not an interim period where water deliveries cease (or worse, the facilities are removed) while the Nation continues to pursue solutions that ensure continued deliveries of the Subject Water to Arrowhead Springs.  Such a stopgap would provide the definitive solution expressed as viable and expeditiously achievable by the USDA so as to allow for water to continue to be delivered to Arrowhead Springs.  Binney Decl. at ¶¶ 32, 40.  Because Defendants' arguments demonstrate no exigent reasons or factual determination to support the immediacy of the Notice of Denial, there is no counterbalance to the Nation's request to preserve the status quo.

In sum, the Nation reasonably believed that it could develop an out-of-court solution with Defendants, ECF No. 65 at ¶ 23, exhausting every potential avenue.  *See generally* Binney Decl.; Hickey Decl. at ¶¶ 7-9.  The Nation had no choice but to turn to this Court for relief when it recently became apparent that Defendants are entrenched in their positions and, notwithstanding the support of the USDA, are themselves determined to shut off water deliveries to Arrowhead Springs after January 15, 2025, and remove the facilities from SBNF lands thereafter, whatever the cost.  *See* ECF No. 65 at ¶ 23; *cf.* ECF No. 73 at 2-3 (discussing Defendants' continued intention to "order[] BlueTriton to implement the [decommissioning]

SOMACH SIMMONS & DUNN
A Professional Corporation

plan and remove the pipeline").  Accordingly, the Nation is well justified in seeking to intervene in this matter and obtain preliminary injunctive relief against Defendants because the disposition of this action may impair or impede the Nation's ability to protect its interests.

**C.    The Threat of Irreparable Harm from a Lack of Water to Combat Wildfire Is Real and Outweighs any Harm that Strawberry Canyon May Suffer from Continued Deliveries During the Pendency of this Case**

Defendants' prior assertions, *see* ECF No. 66 at 3 ("[t]he most recent fire cited by Mr. Garton occurred over five years ago—and ignores the alternative sources of water available"), are tone deaf.

There is a substantial risk that the Nation will be immediately and irreparably harmed if this Court does not preliminarily enjoin Defendants from carrying out the Notice of Denial (as it pertains to delivering the Subject Water to Arrowhead Springs) upon the expiration of the temporary authorization, as doing so would deprive not only the Nation but various fire service agencies of a key water supply to combat wildfire on and around the property.  *See* Alexander Decl. at ¶¶ 3-4.  The Nation's Fire Chief explains "why water must reach Arrowhead Springs by pipeline to be useful for fire suppression."  ECF No. 81 at 9.  Defendants' argument that preliminary injunctive relief is not warranted because it has been five years since there was a local fire, and because there are alternative sources of water shows a complete lack of understanding of fire risks and how to mitigate them.  As the Fire Chief explains, the risk of fire at and around Arrowhead Springs is as great as ever, precisely because of the growth of vegetation over five years, to serve as fire fuel, combined with unprecedented weather conditions.  *See* Alexander Decl. at ¶¶ 6-8 (explaining that fires can happen anywhere at any time, a destructive fire occurred last year just a few miles from Arrowhead Springs, and the fact that years have passed since there was a fire in the immediate vicinity of Arrowhead Springs means that there is a higher wildfire risk associated with additional vegetation).  Little needs to be said about the risks of fires in California, even in the middle of January,

SOMACH SIMMONS & DUNN
A Professional Corporation

not to mention the essential role that water plays in the effort to extinguish it.  *See* Ex. 22.

Defendants dismiss the harm that would flow from the cessation of water deliveries to Arrowhead Springs, effectively arguing the Nation could just use its other sources of water to fight fires.  *See* ECF No. 81 at 31 ("The Nation has not explained why the [Subject] water cannot be diverted once on the Nation's own property and used for fire suppression.").  Again, this reveals a complete misunderstanding of the situation—as there is not currently infrastructure in place to convey water from Strawberry Creek to the locations on the Arrowhead Springs property where the Nation and fire service agencies access it to fight fires.  *See* Alexander Decl. at ¶ 4 ("[The Nation and fire service agencies] rely upon the water delivered to Arrowhead Springs through BlueTriton's infrastructure to combat fire at and around Arrowhead Springs.  If [Defendants are] allowed to shut off all water deliveries from Blue Triton to [Arrowhead Springs], the Nation and entire surrounding community will be in grave peril.").  Building such infrastructure takes time, and again, the Nation is only asking for a stopgap to ensure that existing facilities can be used in the interim, so that the Nation—and other fire service agencies—are not without water to fight fires and save lives, while it seeks a more permanent solution.  *See* Hickey Decl. at ¶ 6; ECF No. 65 at ¶ 22.  Defendants ignore the reality of what is at stake, which is only made more perplexing (not to mention irresponsible) given the uncontrolled wildfire currently raging across southern California.

The Nation, various fire service agency officials, and even members of Congress have expressed their profound concern that local and regional firefighting efforts will be impaired if Defendants proceed with their plan to curtail deliveries of the Subject Water to Arrowhead Springs after January 15, 2025, and remove the facilities on SBNF lands thereafter.  *See* Ex. 23; Ex. 4; ECF No. 65-4 at 2 ("The Nation will not be able to fully operate such facilities and, more importantly, will

SOMACH SIMMONS & DUNN
A Professional Corporation

1    be left without water needed for fire suppression and safety during the dangerous

2    summer fire season if the [Notice of Denial] is implemented."); ECF No. 65-5 at 17

3    (explaining that structures at Arrowhead Springs have been destroyed by fires three

4    times in modern history).  These concerns have apparently fallen on deaf ears, as

5    Defendants continue steadfast on their plan to stop water deliveries and later

6    remove BlueTriton's facilities from SBNF lands, even if it means gaining *some*

7    benefit[2] at a tremendous cost.  It was inexcusable and illegal for Defendants to have

8    issued the Notice of Denial without consulting the Nation, *see* ECF No. 64-1

9    at 12-16, and this Court must now step in to prevent Defendants from carrying out

10    the same, thereby subjecting the Nation and its firefighting partners to irreparable

11    harm.

12    **D.    Defendants Have Not Justified a Need to Terminate Arrowhead Springs'**

13    **Primary Water Supply on January 15, 2025**

14    Despite arguments to the contrary, ECF No. 81 at 22, Defendants can further

15    modify their decision and allow the Subject Water's continued delivery to the

16    Nation during the pendency of this case, and beyond.  Binney Decl. at ¶ 33.

17    Defendants never explain why they cannot provide such an extension; in fact, there

18    is no explanation.  Indeed, Defendants have already twice extended BlueTriton's

19    authorization to allow continued delivery of the Subject Water to the Nation (the

20    second until January 15, 2025, ECF No. 27-1), demonstrating the agency has the

---

[2] Defendants vaguely imply that restoring flows in Strawberry Creek is the benefit
that will result from halting deliveries of the Subject Water, *see* ECF No. 81 at 314,
but they do not (and cannot) quantify said benefit.  Indeed, this is because
Defendants have not adequately analyzed the positive and negative impacts that
will occur if they halt deliveries and remove BlueTriton's facilities from SBNF
lands.  *See* ECF No. 65-10, Hamai Decl. at ¶¶ 13-15.  Further, allowing continued
deliveries of the Subject Water to Arrowhead Springs would result in a lesser
amount of water being diverted from Strawberry Canyon than has been historically
diverted from Strawberry Canyon by BlueTriton, so there would still be ample
restoration of the flows in the creek.

SOMACH SIMMONS & DUNN
A Professional Corporation

power to extend water deliveries until the Nation can secure its own SUP or some other resolution.  The Under Secretary of the agency that oversees the USFS confirmed as much.  Binney Decl. at ¶ 33.  Any incremental environmental benefit[3] that may theoretically exist from halting deliveries of the Subject Water (Defendants have failed to make a showing or share any studies bearing on this issue), cannot outweigh the significant harm the Nation will suffer from cutting off its water supply for Arrowhead Springs.  Indeed, the Nation only receives 20 percent of the water in comparison to BlueTriton's 80 percent.  ECF No. 65-10, Hamai Decl., at ¶ 7.

As shown, the Subject Water is essential for the Nation and area fire service agencies to fight fire at and around Arrowhead Springs.  Any benefit to the stream system that may result has yet to be shown, and indeed, when the Nation asked for studies involving the health of Strawberry Creek, Defendants indicated that such studies were not yet complete.  *See* Binney Decl. at ¶ 14.  Therefore, these theoretical environmental benefits outweigh the imminent threat of catastrophic wildfire, nor do they outweigh the risk of rendering Arrowhead Springs inoperable. BlueTriton's decommissioning plan, which Defendants expressly acknowledge may be approved during the pendency of this case, *see* ECF No. 73 at 2-3, could significantly impact the quality of water in Strawberry Creek, and raises the question of whether environmental benefits will even result from the infrastructure's removal.  ECF No. 65-10 at ¶¶ 12-14.  The risk to Arrowhead Springs (and surrounding communities), on the other hand, is real, quantifiable, and imminent.  *See* Alexander Decl. at ¶¶ 4-6.

---

[3] The Nation desires to steward its ancestral land and ensure a healthy ecosystem. However, Defendants have not substantially justified that removal of the century-old infrastructure would provide environmental benefits, and have not explored how the infrastructure could be used to boost streamflow throughout the entire course of Strawberry Creek, which the Nation believes is a valid option.  ECF No. 65-10 at ¶ 12.

SOMACH SIMMONS & DUNN
A Professional Corporation

Further, Defendants inaccurately allege the Nation will receive the Subject Water regardless of whether BlueTriton is prohibited from delivering it to the Nation, because, according to Defendants, such water will simply flow down Strawberry Creek and across the Nation's land, and the Nation has rights that allow it to divert from the creek at Arrowhead Springs. *See* ECF No. 81 at 18, 24. This assertion fails to recognize the complex hydrology and geology involved, and reflects a fundamental misunderstanding of water law and the difference between documented water rights ("paper water") and the ability to access and use that water ("wet water"). While the Nation does indeed have the right to divert water from Strawberry and East Twin creeks for use at Arrowhead Springs from structures other than BlueTriton's pipeline, infrastructure to allow such diversion does not currently exist. ECF No. 65-6 at ¶ 12; ECF No. 65-10 at ¶ 10. Water cannot magically be applied to beneficial uses simply because a water user has the right to do so; rather, diversion facilities, pipelines, pumps, and other water delivery infrastructure must be designed and constructed prior to this happening. Defendants' misunderstanding of on-the-ground operations of Arrowhead Springs, ECF No. 1-1 at 2-3, highlights the need for an extension beyond January 15, 2025, to provide the Nation with time to sufficiently explore alternatives to the Subject Water.

**E.    The Nation's Interests Are Not Adequately Represented by the Plaintiff**

Defendants claim the Nation's interests are adequately represented by BlueTriton. Not only is it deeply offensive for the federal government to allege that a private, for-profit company can adequately represent an Indian tribal government, it also highlights Defendants' misunderstanding of their trust obligation to the Nation and requirement to operate on a government-to-government basis—which is a foundational concept recognized for well over a century. There is no question under federal law that Defendants and the Nation enjoy a unique political relationship that mandates Defendants to meaningfully consult with and consider

SOMACH SIMMONS & DUNN
A Professional Corporation

impacts to the Nation beyond what is required in Defendants' dealings with
BlueTriton. Even if BlueTriton and the Nation are seeking similar practical
outcomes, the Nation alleges separate legal claims against Defendants that are
rooted in this government-to-government relationship. BlueTriton necessarily lacks
the ability to assert and defend the Nation's sovereign and economic interests, and a
robust discussion of sovereignty is notably absent from Defendants' briefing.

Furthermore, even if the Nation's interests and BlueTriton's interests are
currently somewhat aligned, they are hardly co-extensive. The Nation seeks relief
separate and distinct from BlueTriton. The Nation desires for BlueTriton to
continue delivering the Subject Water to the Nation until the Nation can secure
special use authorization and/or further develop alternative water supplies.
Proposed Complaint-in-Intervention, ECF No. 64-1 at 16-17. BlueTriton, however,
seeks to maintain its commercial water bottling operation in perpetuity. ECF No. 1
at 10. The parties also possess distinct rights. BlueTriton is entangled in a dispute
with the SWRCB regarding certain water rights. ECF No. 2 at 11. The Nation is
not involved in that proceeding, and the SWRCB does not dispute that the Nation
possesses water rights that authorize BlueTriton's continued delivery of the Subject
Water to Arrowhead Springs. ECF No. 15-6 at 91.

**F.    Defendants Downplay the Scope of the Decommissioning Plan and Its
Potential to Harm the Nation, All While Encouraging the Nation to
Apply for a SUP that Cannot Be Approved Without Infrastructure**

Defendants indicate they will provide the Nation a mere 30-days' notice of
their approval of BlueTriton's decommissioning plan, and contend this is sufficient
to consider potential impacts of this plan to the Nation's property and resources.
ECF No. 73 at 2-3. Accordingly, decommissioning could begin during the
pendency of this case, at which point the Nation would have to come to this Court
again to seek a preliminary injunction. Whether decommissioning is approved this
month or next does not change the fact that the Nation currently relies on the
Subject Water delivered through infrastructure Defendants plan to remove. The

SOMACH SIMMONS & DUNN
A Professional Corporation

1    Nation needs this water to operate Arrowhead Springs, and as has occurred for

2    nearly a century, the Nation and surrounding communities rely on this water for

3    wildfire suppression purposes.

4        Defendants assert that if the Nation relies on the Subject Water, it can apply

5    (and should have applied) for a SUP to operate BlueTriton's infrastructure.  They

6    make this assertion, all while seeking to immediately implement a

7    decommissioning plan that would remove the infrastructure upon which a SUP

8    would rely.  Defendants' position could not be more disingenuous.  Indeed, if

9    Defendants were truly open to ensure the Nation's water and property interests at

10   Arrowhead Springs were protected, and thus amenable to granting the Nation a

11   SUP to secure water through BlueTriton's infrastructure, they would not be seeking

12   its the immediate removal.

13   **G.    The Nation Is Likely to Succeed on the Merits in Its Motion for a
14   Preliminary Injunction**

15       Defendants assert that they did not violate the NHPA, the NFMA, or their

16   trust obligation to the Nation in issuing the Notice of Denial and subsequent

17   modifications.  Defendants' refusal to accept responsibility for their shortcomings

18   is not persuasive.

19       Defendants concede that Arrowhead Springs constitutes a culturally and

20   historically valuable property that warrants NHPA review and section 106

21   consultation.  ECF No. 81-4 at 1-2.  However, Defendants allege that such review is

22   only required when *granting* special use authorization rather than when *denying* it.

23   However, this argument is not supported by record or law.  Defendants' prior

24   section 106 consultation occurred eight years ago when they were merely extending

25   BlueTriton's prior special use authorization to allow continued operation of the

26   infrastructure as had occurred historically.  During that process, Defendants

27   determined the undertaking was likely to have little effect on historic properties

28   because it would "not authorize surface or resource disturbance."  ECF No. 81-4

SOMACH SIMMONS & DUNN
A Professional Corporation

at 2.  The Notice of Denial, however, terminates that authorization and mandates an

intensive decommissioning process that will involve removal of miles of water

delivery infrastructure.  The plan requires over 10,000 helicopter flights, provision

of on-site materials such as fuel, oil, cement, and sanitary facilities, and could cause

landslides and other hydrologic impacts.  ECF No. 65-10, Hamai Decl. at ¶ 12.

This process poses a much more serious threat to the cultural and historical

resources at Arrowhead Springs than simply continuing a century-long status quo

of water delivery.  As such, the action warrants its own NHPA analysis.

Defendants further concede that approval of a SUP would require section 106

consultation, but that denial of such a permit does not.  ECF No. 81 at 17 n.2.

However, Defendants nowhere acknowledge the licenses and authorizations

involved with the removal plan, which will require official approval by Defendants,

and once approved, grant BlueTriton a license to occupy the SBNF to execute

removal.  The Notice of Denial and subsequent modifications clearly constitute an

undertaking that requires Defendants to engage in NHPA section 106 consultation.

Defendants also try to skirt their duties to tribal nations under the SBNF

forest plan by arguing such duties are unenforceable and merely aspirational.

However, part 3 of the SBNF forest management plan explicitly provides that

"[s]tandards are mandatory requirements that come into play as site-specific

activities are planned for implementation, and are designed to be consistent with

achieving the objectives and desired conditions.  The standards act as thresholds or

constraints for management activities or practices . . . ," as shown on page 2 of

part 3 of SBNF management plan.  Standard 60 within the forest management plan,

on page 13, part 3 provides that "[u]ntil proper evaluation occurs, known heritage

resource sites shall be afforded the same consideration and protection as those

SOMACH SIMMONS & DUNN
A Professional Corporation

properties evaluated as eligible to the National Register of Historic Places."[4]

Defendants do not deny their knowledge of the historical and cultural resources that exist at Arrowhead Springs, as indicated by their long ago consultation with the Nation on the prior renewal of BlueTriton's permit, ECF No. 81-4, yet allege that continuing the status quo of water delivery would implicate a historical analysis but that terminating the status quo and order an intensive removal does not implicate such an analysis.  This argument is illogical and unpersuasive.

Defendants concede they violated their own internal policies (e.g., Joint Secretarial Order, *see* ECF No. 64-2 at 18, 22), by providing no response to that argument.  As asserted in the Nation's pending motion, agencies violate the APA when they disobey their own internal policies.  *Id.* at 22-24.

Defendants challenge the applicability and enforceability of the executive orders and agency pronouncements imposing specific obligations on Defendants in their dealings with the Nation, claiming that only treaties, statutes, and regulations—but not executive orders and agency directives—can form the basis of a valid breach of trust claim.  ECF No. 81 at 23.  However, "an executive order is judicially enforceable . . . if it has the force and effect of law,' which is true when it is 'grounded in a statutory mandate or congressional delegation of authority.' " *Chen v. INS*, 95 F.3d 801, 805 (9th Cir. 1996) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 303-04 (1979)); *W. Watersheds Project v. BLM*, 629 F. Supp. 2d 951 (D. Ariz. 2009) ("Presidential proclamations and executive orders have the force and effect of laws when issued pursuant to a statutory mandate or delegation of authority from Congress") (quoting *Indep. Meat Packers Ass'ns v. Butz*, 526 F.2d 228, 234 (8th Cir. 1975)).  Further, agency pronouncements have the force and effect of law when they "(1) prescribe substantive rules—not interpretive rules,

[4] The 2006 Record of Decision and SBNF Management Plan can be found at https://www.fs.usda.gov/main/sbnf/landmanagement/planning.

SOMACH SIMMONS & DUNN
A Professional Corporation

1    general statements of policy or rules of agency organization, procedure or

2    practice—and (2) conform to certain procedural requirements." *River Runners for*

3    *Wilderness v. Martin*, 593 F.3d 1064, 1071 (9th Cir. 2010) (internal citations

4    omitted).  It is a well-established doctrine of federal Indian law that Congress has

5    exclusive authority to regulate affairs with Indian tribes.  *Cherokee Nation v.*

6    *Georgia*, 30 U.S. 1, 39 (1831).  Executive orders and agency directives related to

7    agency dealings with Indian tribes are based in Congress' delegation of that

8    authority to agencies and therefore have the force and effect of law.

9         Defendants claim they have not breached their trust responsibility to the

10   Nation because they have not violated any laws.  However, as explained above and

11   in the Nation's pending motion, Defendants' decision to terminate the Nation's

12   water supply for Arrowhead Springs without notice, consultation, consideration, or

13   attempt to mitigate adverse impacts indeed does violate federal law and, therefore,

14   constitutes a violation of the United States' sacred trust.  *Pit River Tribe v. United*

15   *States Forest Serv.*, 469 F.3d 768, 788 (9th Cir. 2006).  The Nation is likely to

16   succeed on the merits of its claims.

17        Assuming *arguendo* that an executive order cited in the Nation's complaint-

18   in-intervention does not have the force or effect of law (or are not binding on

19   Defendants), the USFS has promulgated regulations that incorporate and implement

20   Executive Order 13175.  *See* 36 C.F.R. § 219.4(a)(2).  Thus, Defendants'

21   contention that they have no trust responsibilities here, and need not consult with

22   the Nation before issuing the Notice of Denial (which orders the curtailment of

23   water deliveries and removal of facilities in the SBNF), is erroneous and contrary to

24   their own regulations.  *See Nebraska v. Su*, 121 F.4th 1, 16 (9th Cir. 2024) ("[j]ust

25   because an agency's regulations are based on an executive order, this 'hardly seems

26   to insulate them from judicial review under the APA, even if the validity of the

27   [executive order] were thereby drawn into question' ") (quoting *Chamber of Com.*

28   *of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)).

SOMACH SIMMONS & DUNN
A Professional Corporation

## II.  CONCLUSION

Defendants' arguments opposing the Nation's intervention and requested preliminary injunctive relief lack merit.  Defendants acted unlawfully by issuing the Notice of Denial, and still, the Nation was willing to collaboratively work with Defendants to develop an out-of-court solution allowing continued deliveries of the Subject Water to Arrowhead Springs.  Defendants have refused and are determined to carry out the plan set forth in the Notice of Denial, leaving the Nation with no choice but to seek judicial relief to avoid irreparable harm that will come after January 15, 2025, once the temporary authorization expires.

Accordingly, the Nation requests that the Court grant both its Motion to Intervene and corresponding Motion for Preliminary Injunction.

The undersigned, counsel of record certifies that this reply contains 4928 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

SOMACH SIMMONS & DUNN, PC

DATED: January 11, 2025          By *s/ Stuart L. Somach*
Stuart L. Somach (SBN 90959)
Maximilian C. Bricker (SBN 350150)
Attorneys for [PROPOSED] Plaintiff-
Intervenor Yuhaaviatam of San Manuel
Nation, a federally recognized Indian tribe,
also federally recognized as San Manuel
Band of Mission Indians

## **TABLE OF EXHIBITS**

| 22 | January 8, 2025 – Fire Hydrants Ran Dry as Pacific Palisades Burned. L.A. City Officials Blame "Tremendous Demand," <u>Los Angeles Times,</u> <u>by Matt Hamilton and David Zahniser</u>. |
|----|---|
| 23 | January 7, 2025 – Letter from Dan Munsey, Fire Chief, to Daniel Little, Chief Intergovernmental Affairs Officer |
| 24 | December 18, 2024 – Letter from Members of Congress to Secretary Tom Vilsack |
| 25 | March 22, 2024 – Email from Eric Ustation regarding Topics of Discussion for March 26, 2024 Meeting at Arrowhead Springs |
| 26 | March 26, 2024 – Agenda Distributed at March 26, 2024 Meeting at Arrowhead Springs |

SOMACH SIMMONS & DUNN
A Professional Corporation